573 So.2d 467 (1991)
Theresa Messina BREWER
v.
Frank BREWER.
No. 90 C 1320.
Supreme Court of Louisiana.
January 22, 1991.
Richard M. Michalczyk, Cronvich, Wambsgans & Michalczyk, Metairie, for plaintiff-applicant Theresa Messina Brewer.
Leonard L. Levenson, Kenner, for defendant-respondent Frank Brewer.
WATSON, Justice.
After a marriage of nearly forty years, Frank Brewer left his wife, Theresa Messina, on March 21, 1988. Brewer was involved in a romantic affair with another woman but contended his wife was guilty of "nagging." On the basis of mutual fault, the trial court gave a judgment of separation. The Court of Appeal affirmed. 561 So.2d 217 (La.App. 5th Cir.1990). A writ was granted to consider whether Theresa Messina was legally at fault. 566 So.2d 965 (La.1990).
Under LSA-C.C. art. 141,[1] a separation on the ground of mutual fault precludes permanent alimony. See "The Theory of Alimony" at 77 California Law Review 1 (1989). To be guilty of mutual fault, each of the parties must furnish one of the grounds for separation in LSA-C.C. art. 138. Adams v. Adams, 389 So.2d 381 (La.1980). In pertinent part, these are: adultery; habitual intemperance, excesses, cruel treatment, or outrages which make living together insupportable; and abandonment.
*468 The issue is whether the trial court was clearly wrong in finding both spouses at fault in this separation.
Theresa Messina's petition for separation alleged that her husband had abandoned her and was guilty of cruel treatment in carrying on an affair with Della Chun. As plaintiff in reconvention, Frank Brewer alleged that his wife had abandoned him and was guilty of cruel treatment because her harassment, accusations and nagging made living with her insupportable.
Anthony Messina, Theresa's brother, was present on March 21, 1988, when Frank left Theresa. Although Frank said he was thrown out of the house, Anthony testified that Frank left on the pretext of doing some undercover work. Anthony's wife, Mary Ann Messina, was also visiting when Frank left the house, and did not know why he left his wife. Theresa said Frank had tried for the previous six months to get her to leave him, threatening her with a revolver, beating her and bragging about his sex life with Della. Even before the separation, Anthony and Mary Ann said Frank was never at home, left Theresa to raise their two sons alone and frequently hollered at her.
Gerald Brewer, age thirty-nine, said his parents had the worst marriage he had ever seen. Although he believed they loved one another, they fought and bickered constantly. However, Gerald confirmed that his father was never at home. According to Anthony Messina, the couple's only serious arguments were about Joey Brewer, their seventeen year old son, who had problems.
Frank Brewer, president of an organization entitled "Deputies for Lee," testified that he had known Della Chun seven or eight years, initially at Dunkin Donuts and then as a fellow member of the Sheriff's Department and Deputies for Lee. Frank and Della both went on a Deputies for Lee trip to Las Vegas. He reluctantly admitted that she sat with him on the plane. In addition, there was evidence that Frank had been with Della at the following establishments: Magnolia Bar; Chun Lee Restaurant; Toney's Spaghetti House; Ernie's Restaurant; Ralph & Kacoo's; Middendorf's; Fong's Chinese; C'est Si Bon Restaurant; Jim Chehardy's; House of Lee; Ruby Tuesday's; Port of Call; Catfish Charlie's; Howard Johnson's Airport Restaurant; Copeland's in Slidell; Best Western Motel in Gulfport; Top of the Mart; Algiers Landing; Canton Restaurant; Houston's; Ruth's Chris Steak House; Copeland's in Jefferson Parish; Trey Yuen; Cathay Inn; Deanie's Seafood; KJ's Restaurant; New Orleans Hilton; and the Catfish Shack. According to Frank, they were always in the company of other people. His testimony was not corroborated, and the amounts charged are generally consistent with dinner for two people. Frank also escorted Della on the Steamboat Natchez and at the 1988 Jazz Festival. She accompanied him at many carnival parades.
On March 19, 1988, Theresa Messina prepared a lavish St. Joseph's Day feast at her home for approximately twenty-five people. Della Chun attended the party, sat with Frank, danced with him and put on his police jacket. They touched each other, and, at one point, Della grabbed Frank's groin area. When Frank left to take Della home, he was gone for three hours.
There was testimony that Frank Brewer and Della Chun were both occupying Apartment 2 of the Regency Square Apartments at 4000 Hessmer Street on April 29, 1988. A fellow employee of the Sheriff's Department picked Frank up at that location around midnight and returned him between five and six A.M. the next morning. Frank was apparently still there when Della Chun went to work in her Dunkin Donuts uniform. Frank claimed that he was subletting the apartment from Della. When Gerald and his wife, Corrine, visited the apartment, Della answered the door dressed in a towel. Frank was present at the time and showed Corrine how well his socks and uniforms were being kept in the bedroom dresser.
Karen Poole, the girlfriend of Joey Brewer, testified that she lived with Frank Brewer and Della Chun from December 1 through December 15, 1988, sleeping on the sofa bed while they slept together in *469 the bedroom. In order to go to the bathroom, it was necessary to walk through their bedroom and she had seen Frank and Della together in bed.
Although Theresa Messina waited on her husband, Gerald and Corrine Brewer described her as a nagging wife. After seventeen years of living next door, Gerald and Corrine moved to the Westbank. However, their two children stayed with Grandmother Theresa on the Eastbank during the next two school years. Corrine said the arrangement was difficult.
Frank Brewer said his wife called him bald-headed, but she denied any critical intent. The comment does not rise to the level of public defamation. See Starns v. Starns, 176 La. 610, 146 So. 165 (1933). Compare McNeal v. McNeal, 233 La. 269, 96 So.2d 563 (1957). Frank William Jackson, a fellow employee of the Sheriff's Office, said Theresa had called her husband "a bald-headed sucker." A photograph in the record of Della Chun with Frank Brewer lends credence to this description, and portrays Della as an attractive, youthful blonde. Other witnesses said Theresa had been rude and cold toward her husband in public. This testimony was generally lacking in specificity as to details and time frame and was insufficient to prove cruel treatment.
After Frank left her, Theresa did complain and make scenes. She appeared, uninvited, at a barbecue where Gerald and Corrine were entertaining Frank and Della. Her behavior, regarded as excessive by Frank, his secretary and Gerald, occurred after her husband started flaunting what appeared to be an adulterous relationship with Della Chun.
There was no evidence that Theresa Messina abandoned her husband. Although Frank claimed Theresa was not interested in sex, she denied refusing him, saying his only sexual interest was in Della. Frank indicated that he had independent sexual problems, stating in regard to Della: "I'm sixty-one years old and have high blood pressure and diabetes, and I'm telling you `No,' but I wish I could have." (Tr. 143.)
Frank Brewer admitted that Della Chun signed checks for him, cleaned his apartment and accepted gifts in lieu of rent. Although he denied sleeping with Della, Frank said he would have been proud to do so; and that it would be an honor to marry her. While denying an adulterous connection, he admitted a relationship which was incongruous with his marriage vows. Since Frank tolerated his wife's tongue for nearly forty years, it is obvious that Della was the factor which caused their separation.
Taking the evidence as a whole, the trial court apparently equated fault in a generic sense, i.e., imperfection, with legal fault in finding Theresa at fault in the separation. In this imperfect world, all spouses have faults, and a spouse need not be perfect to be free from legal fault.
To be legally at fault, a spouse must be guilty of cruel treatment or excesses which compel a separation because the marriage is insupportable. Pearce v. Pearce, 348 So.2d 75 (La.1977); Vicknair v. Vicknair, 237 La. 1032, 112 So.2d 702 (1959); Davieson v. Trapp, 223 La. 776, 66 So.2d 804 (1953); Breffeilh v. Breffeilh, 221 La. 843, 60 So.2d 457 (1952); Kendrick v. Kendrick, 236 La. 34, 106 So.2d 707 (1958). The trial court clearly erred in finding that fault on Theresa's part was a cause of the couple's separation. The record leaves no doubt that Frank Brewer's adultery with Della Chun was the basic cause of the separation. Under these circumstances, legal fault must be assigned solely to him.
While the conclusions of the trial court are accorded much deference in this type of case, here there is clear and obvious error in equating "nagging" with legal fault. The error, if not corrected, would result in both a misapplication of Civil Code article 138 and an egregious miscarriage of justice.
For the foregoing reasons, the judgments of the trial court and Court of Appeal are reversed. It is ordered, adjudged and decreed that Theresa Messina Brewer is free from legal fault in the parties' separation. *470 All costs, at trial and appeal, are assessed to Frank Brewer.
REVERSED AND RENDERED.
NOTES
[1] "A separation from bed and board shall be granted although both spouses are mutually at fault in causing the separation. In such instances, alimony pendente lite may be allowed but permanent alimony shall not be allowed thereafter following divorce." LSA-C.C. art. 141. Added by Acts 1976, No. 495, § 1.