577 So.2d 1152 (1991)
Warren Paul KEAN
v.
Andrea Phelps KEAN.
No. CA 90 1920.
Court of Appeal of Louisiana, First Circuit.
March 28, 1991.
Writ Denied May 24, 1991.
*1153 Paul M. Hebert, Jr., Baton Rouge, for plaintiff-appellant Warren Paul Kean.
Alan S. Fishbein, Baton Rouge, for defendant-appellee Andrea Phelps Kean.
Before SAVOIE, CRAIN and FOIL, JJ.
CRAIN, Judge.
This is an appeal of a judgment of divorce finding mutual fault in the breakup of the marriage and awarding sole custody of the minor child to the mother.

FACTS
Andrea Phelps and Warren Paul Kean were married on July 29, 1983, after Warren completed his first year of law school. In 1985, after Warren graduated from law school, they moved to New Orleans, where Warren practiced law for one year. Warren then enrolled in New York University School of Law and they moved to New York while Warren obtained a Masters of Law in taxation. During this period of time, Warren was still employed by the law firm in New Orleans. After graduating, they returned to New Orleans. On September 12, 1988, the couple's only child, Adrienne, was born in New Orleans. In October, 1988, Warren obtained a position in a New York City law firm and they moved to New York. Sometime in 1989, Warren and Andrea started experiencing marital problems. In June, 1989, Andrea *1154 filed a petition in New York seeking custody of Adrienne and support. Warren filed an answer requesting that the petition be dismissed and for an injunction prohibiting the removal of the child from New York. Warren did not request custody, support, separation or divorce. On October 13, 1989, the parties executed an agreement delineating, inter alia, custody of Adrienne, visitation rights of Warren and child support. Approximately one week later, Andrea moved to Louisiana. Warren exercised visitation with Adrienne and she then was returned to Andrea in Baton Rouge prior to the end of October. Andrea withdrew the suit for custody in New York in October, 1989, but the New York clerk's office failed to record this. Andrea petitioned the court in February, 1990, and the court ordered the correction of the records to reflect the October, 1989, withdrawal of the suit. On November 20, 1989, Warren filed an action for divorce in Louisiana based on adultery. On December 12, 1989, Andrea answered, denying the allegations and reconvening for a judgment of separation, alimony, child support and sole custody of the minor child, Adrienne. Warren filed exceptions of lis pendens and res judicata to Andrea's reconventional demand in Louisiana, contending that the matters were the subject of ongoing proceedings in New York; and had already been settled by the separation agreement executed by the parties and that Louisiana lacked jurisdiction to decide custody under La.R.S. 13:1700 et seq. The trial court referred the exceptions to the merits.
After hearing all of the evidence, the trial court denied the exceptions filed by Warren. The trial court awarded Warren a divorce based on the finding that the defendant had committed adultery, but found mutual fault in the breakup of the marriage precluding either party from seeking alimony. The trial court awarded sole custody of the minor child to Andrea and ordered Warren to pay child support in the amount of six hundred dollars ($600.00) per month. The trial court denied Andrea's request for alimony pendente lite.
The issues for review are whether the trial court erred in finding mutual fault in the breakup of the marriage; whether the trial court erred in finding that Louisiana had jurisdiction under the Uniform Child Custody Jurisdiction Act, as adopted by Louisiana in La.R.S. 13:1700 et seq., to decide custody when the minor child has resided in Louisiana less than six months prior to the filing of the suit; and whether the trial court erred in failing to recognize and enforce the provisions of the separation agreement regarding custody and child support.

MUTUAL FAULT
The trial court awarded a divorce to Warren based on adultery but found mutual fault in the breakup of the marriage. Warren appealed the decision of the trial court.
The appellant, relying on Land v. Land, 483 So.2d 186 (La.App. 2d Cir.1986), argues that his fault was not an issue before the trial court because the trial court found grounds to grant a divorce prior to hearing evidence in the separation proceeding and finding grounds for divorce rendered moot the separation issue. Land states that having entered a decree of divorce, a trial court is then precluded from granting a judgment of separation. Land does not preclude a court from hearing the evidence for a determination of fault for La.C.C. art. 160 purposes. We note that the trial court in Land made a determination of fault and found mutual fault.
The court was scheduled to hear evidence regarding a claim for divorce and a claim for separation in the same proceeding. Although these matters would have been simplified had the trial court heard all evidence prior to ruling on the divorce or separation proceedings, we find no error in the trial court's actions here. Grounds for separation as enumerated in La.C.C. art. 138 are criteria to be used in determining whether a spouse is at fault under La.C.C. art. 160 for purposes of determining entitlement to permanent alimony. Thibodeaux v. Thibodeaux, 525 So.2d 69 (La. App. 3rd Cir.1988). The defendant's reconventional demand states allegations, that if proven, could constitute fault on the part *1155 of the appellant for La.C.C. art. 160 purposes. We find that the issue of the appellant's fault was properly before the court.
In its reasons for judgment the trial court states:
I believe that there was a mutuality of fault in this situation. I stated previously that I thought both parties were having a difficult time adjusting to life in New York with Mr. Kean's pressures involved from his law practice, financial problems. Mrs. Kean from the fact that she was not happy and well-adjusted in New York. I believe there was sort of reciprocally a total breakdown of communication between the parties, that neither of them were communicating adequately and appropriately with the other. This failure to communicate constituted a mutuality of fault. Mr. Kean may have been somewhat overbearing at times. Mrs. Kean perhaps a little submissive, but if they had tried to work on these problems sincerely with the hope of salvaging their marriage, recognizing their own imperfections rather than looking at the imperfections of the other party, they may have been able to resolve the problems that existed between them.
To be guilty of mutual fault, each of the parties must furnish one of the grounds for separation in La.C.C. art. 138. Brewer v. Brewer, 573 So.2d 467 (La.1991). In Brewer, the Louisiana Supreme Court reversed a trial court judgment of mutual fault, where the wife's fault consisted of "nagging." The court found that the trial court apparently equated fault in a generic sense with legal fault. The court stated that, "(t)o be legally at fault, a spouse must be guilty of cruel treatment or excesses which compel a separation because the marriage is insupportable."
We find that the trial court erred in finding mutual fault in the instant case. Lack of communication is not a ground for separation under La.C.C. art. 138. The only legal fault found by the trial court was adultery committed by the appellee. We reverse the judgment insofar as it finds mutual fault and assign legal fault solely to the appellee, Andrea Phelps Kean.

LIS PENDENS
The appellant filed an exception of lis pendens, arguing that a proceeding was pending in New York between these same parties to determine the same issue.
The trial court found that the proceedings in New York had been withdrawn prior to the trial. At the time of the ruling there was no proceeding to determine custody pending in New York. This argument is without merit.

CUSTODY
The appellant argues that Louisiana lacked jurisdiction to decide custody under the Uniform Child Custody Jurisdiction Act, as adopted by La.R.S. 13:1700 et seq.
The applicable provisions of La.R.S. 13:1702 state:
A. A court of this state which is competent to decide child custody matters has jurisdiction to make a child custody determination by initial or modification decree if:
(1) This state(i) is the home state of the child at the time of commencement of the proceeding ...
(2) It is in the best interest of the child that a court of this state assume jurisdiction because (i) the child and his parents, or the child and at least one contestant, have a significant connection with this state, and (ii) there is available in this state substantial evidence concerning the child's present or future care, protection, training, and personal relationships ...
La.R.S. 13:1701(5) states:
"Home state" means the state in which the child immediately preceding the time involved lived with his parents, a parent, or a person acting as parent, for at least six consecutive months, and in the case of a child less than six months old the state in which the child lived from birth with any of the persons mentioned. Periods of temporary absence of any of the named persons are counted as part of the six-month or other period.
The appellant argues that New York was the home state and, since the child was in *1156 Louisiana for only two months at the time Andrea filed for custody, Louisiana lacked significant connections to assume jurisdiction.
The trial court relied on Revere v. Revere, 389 So.2d 1277 (La.1980), to find that Louisiana had jurisdiction to determine custody. In Revere, it was questionable whether Louisiana was the home state, but there was no question that Louisiana was the state with the most significant connection with the child. The court determined that Louisiana had jurisdiction to determine custody even if not the home state.
In this case, New York is undoubtedly the home state. However, to state that Louisiana lacked significant connections is to ignore the facts.
As stated by the trial court in its reasons for judgment:
Both parties were born and rearedI don't know if they were born here, but both of them were raised and spent the majority of their lives in the Parish of East Baton Rouge during their formative years, and in the State of Louisiana for all except the last year or so, except for schooling. They both come from families that have roots in the community, very substantial roots, as evidence indicates.
Mrs. Kean had the right, had she chosen to do so, to come back to Louisiana under the laws of this State under Article 142 of the Louisiana Civil Code to file an action for separation against Mr. Kean even though the acts that she relied upon may have occurred outside of this state.
Mr. Kean filed the initial action or proceeding in Louisiana. Certainly thereby according Mrs. Kean the right to come in and seek any other incidental or ancillary relief that might have been appropriate under the circumstances.
Even under the agreement which these parties have executed it is very obvious that this child was to primarily be in the State of Louisiana following the separation of the parties.
Under these circumstances the Court is of the opinion that this state, as the state having the most substantial connection to the interest and welfare of this child, has and will accept and take jurisdiction over this child. There is no one living in New York that has any interest in this child that I can recall that was revealed by the evidence other than the father himself. Everybody else is in Louisiana. Children certainly need the benefit of association not only with their parents but in many cases with the extended family.
As admitted by the appellant, even while the parties lived in New York, appellee and the minor child visited Baton Rouge every four to six weeks and stayed for a week to ten days at a time.
The appellant next argues that the Parental Kidnaping Prevention Act of 1980 (PKPA), 28 U.S.C. § 1738A mandates "home state" jurisdiction over "significant connections" and limits jurisdiction based on significant connections to instances where it appears that no other state would have jurisdiction as the home state.
We find that the PKPA does not apply in this instance. As stated in the legislative enactment of the PKPA, the reason for establishing the Act was to:
establish a national system for locating parents and children who travel from one such jurisdiction to another and are concealed in connection with such disputes, and to establish national standards under which the courts of such jurisdictions will determine their jurisdiction to decide such disputes and the effect to be given by each such jurisdiction to such decisions by the courts of other jurisdictions.
The general purposes of the Act are to:
1) promote cooperation between State courts to the end that a determination of custody and visitation is rendered in the State which can best decide the case in the interest of the child;
2) promote and expand the exchange of information and other forms of assistance between States which are concerned with the same child;
3) facilitate the enforcement of custody and visitation decrees of sister States;

*1157 4) discourage continuing interstate controversies over child custody in the interest of greater stability of home environment and of secure family relationships for the child;
5) avoid jurisdictional competition and conflict between State courts in matters of child custody which have in the past resulted in the shifting of children from State to State with harmful effects on their well-being; and
6) deter interstate abductions and other unilateral removals of children undertaken to obtain custody and visitation awards.
First and foremost, we are not dealing here with a case of abduction or concealment of the minor child. The parties have not restricted access to the child and intended that the primary residence of the child be Louisiana. Louisiana has not failed to recognize a decree by a court of another state. There are no decrees by any state regarding custody of this child. There is no jurisdictional competition over custody of this child. There is no pending proceeding regarding custody. The child was not brought to Louisiana by a party lacking custody seeking to obtain a custody decree. We are not dealing with a case where a non-resident has been required to litigate in Louisiana. The appellant chose his forum when he filed suit in Louisiana. The PKPA does not invalidate a decree where jurisdiction is based on significant connections. The facts of the instant case do not fall within the purview of the PKPA and application of the PKPA to deny jurisdiction in Louisiana would result in a total failure of the purposes of the Act and the reason for its enactment.
Finding that Louisiana has jurisdiction to determine custody, and the PKPA does not apply to the instant case, we now review the court's determination of custody.
The appellant argues that the trial court erred in failing to recognize the validity of the separation agreement executed in New York and give it the same accord as it would have in New York. The appellant argues that the agreement should have been given more weight than that given a Louisiana agreement and that appellee should have been subject to a "heavy burden" of showing a change of circumstances or necessitous reason to modify the agreement instead of the distinction drawn between a voluntary agreement and a considered decree delineated in Bergeron v. Bergeron, 492 So.2d 1193 (La.1986.)
We do not belabor the issue as to whether Louisiana or New York law applies to determine the validity of the separation agreement because we find the result to be the same regardless of the governing law. As stated by the trial court in its reasons for judgment:
According to Mr. Weitz, as the court recalls, that any agreements that these parties reached would had to have been subject to ratification by the New York courts. The question is, of course, whether or not this court should recognize that compromise agreement which was entered into by the parties in New York. Certainly it was not a final and definitive judgment. I presume even under the law of the State of New York it was not chiseled in stone in that state. Any matter relating to custody and support is always subject to modification. The principal of res judicata is not applicable.
Furthermore, I am of the opinion, for whatever her reasons may have been, Mrs. Kean signed that agreement out of sheer desperation and in an attempt to resolve something in a way that she could finally get out of the State of New York. She had been advised she couldn't leave New York. I don't know what kind of threats may have been made, if any, but she was rather unequivocally told under the laws of the State of New York she couldn't leave with that child. Although, there may have been other matters that were preying on her mind at that time, I am convinced that the primary reasons she entered into that agreement was to get back to her parents and her family out of the State of New York.
As a matter of policy, this Court will not enforce those extra-judicial and will *1158 not recognize those extra-judicial agreements relating to custody and support because none of them have ever been the subject of a considered decree. The support issue was not subject to a guideline hearing which, as I understand it; is required by the law of New York, and is applicable to any final definitive judgment in this state.
We find no error in the trial court's judgment. The Court of Appeals of New York (New York's highest court) in Eschbach v. Eschbach, 56 N.Y.2d 167, 451 N.Y.S.2d 658, 436 N.E.2d 1260 (1982), modified a separation agreement which had been executed by the parties and incorporated in a court judgment but not subject to a court hearing. The court in Eschbach noted that an agreement by the parties can not bind the court to a disposition other than that which a weighing of all the factors involved shows to be in the child's best interests. The court found that an agreement between the parties was but one factor to be weighed by the court and the weight to be given depends on whether the custody agreement had been subject to a full hearing or not. Eschbach, 451 N.Y.S.2d at 660-661, 436 N.E.2d at 1260-1263.
We note that as a whole, the agreement is very one-sided and certain provisions could not be upheld. The agreement attempts to contractually forbid the parties from judicially seeking a change in custody or an increase in child support. While this may be in the appellants' best interest, it can hardly be considered to be in the child's best interest should the circumstances require a modification of custody or child support. The agreement provides for an almost unilateral control of visitation disputes by the appellant. Further, the agreement provides for child support to be paid directly by the appellant and limits his child support and payments to be paid directly to the appellee, to one hundred dollars ($100.00) per month. We will not enforce the separation agreement.
The trial court awarded sole custody of the child to the appellee and ordered the appellant to pay child support in the amount of six hundred dollars ($600.00) per month. In its reasons for judgment the court states:
On the issue of custody, of course, we do have this agreement which I have indicated I will not recognize and enforce insofar as the custody and support provisions are concerned.
As to custody, of course, the Louisiana law now provides that there is no presumption in favor of joint custody when the parties are domiciled in different states. It can still be considered but there is no presumption in its favor.
Taking into consideration the history of this case and the fact that they are residing in different states, the fact that this has become a very acrimonious situation in which not only did the parties sue each other but there are suits pending between Mr. Kean and Mrs. Kean's parents. The negotiations conducted in New York were, of course, highly adversarial, as I see it, as between the lawyers. Mr. Weitz recommended to Mrs. Kean that she not sign that agreement. She did it contrary to his advice to get out of New York.
I don't believe that this is an appropriate case for joint custody because of the fact that they live in separate states, but also because of the animosity presently existing. And also because of Mr. Kean's insistence on a type of plan which the Court deems to be not in the best interest of this child by having this child transported back and forthgoing to and from New York once every forty days. Also, of his desire to minimize his own exposure to any future child support obligation by obtaining an indemnification agreement with respect thereto. The indemnification agreement is not before me for determination but the Court has been made aware of it. And I recognize that there has been a tremendous amount of legal and other expense involved in this matter, but it is indicative of an inability to perform under a joint custody plan where one of the parents is going to seek an indemnification from the parents of their spouse for any additional support they might be required to pay, as well as all legal expenses.

*1159 The Court finds that sole custody would be in the best interest of this child. It's rather obvious, don't need to belabor the point, that Mrs. Kean will be the primary nurturing parent, although Mr. Kean has nurturing skills and loves this child dearly that hereafter the primary responsibility for the proper and appropriate rearing of this child will rest with Mrs. Kean. So the Court will grant custody to her.
On the issue of visitationI have already indicated that I don't like this plan of hauling a child back and forth from Louisiana to New York. The Court is not aware at this time of any other appropriate visitation plan that would exist. The Court has been assured by counsel for Mrs. Kean that if she is awarded custody that she will grant Mr. Kean more than reasonable access to this child.
It's very obvious that despite the difficulties the parents are having with each other, and have had, they both dearly love this little girl and that is something that should be encouraged and that child should be allowed to maintain a good relationship with both parents with reasonable access by both parents to this child, taking into account the distance separating them and the custodial disposition.
I am not going to award any specific visitation at this time. I am going to fix the visitation as reasonable visitation. If the parties cannot be reasonable with each other, they will, of course, have the right to come to court and have the Court establish a detailed fixed visitation provision.
The Court will grant to Mrs. Kean the custody of this child, subject to reasonable rights of visitation by Mr. Kean, reserving the right to either party to seek a specific visitation schedule by the court.
We now get down to the issue of child support. Although both parties may have made some reference to the guidelines, we have not had a specific guideline hearing insofar as the child support is concerned. New York has some guidelines and we have some that apparently varies somewhat from New York. Mr. Kean does have extraordinary expenses in New York, so I am going to just enter an award at this time which will reserve the right for both parties to seek a full blown guideline hearing as such under the rules of this court. And you will have the right, of course, to argue as the applicability or inapplicability of those guidelines.
The little girl is well taken care of in her present home. Fortunately, Mrs. Kean has obtained some reasonably good work. She is making a reasonably adequate income herself. Mr. Kean is making well in excess of a hundred thousand dollars a year. It becomes a question of how much can you spend on a little girl. It couldn't be a tremendous amount. Of course, Mrs. Kean is entitled to have the child in adequate housing. Hopefully she can find a reasonable and adequate apartment in Louisiana that won't cost nineteen hundred dollars a month. Each of them are working, so both have some obligation toward the support of this child, including child care expense. Mr. Kean apparently has policies of insurance covering this child, medical insurance/hospitalization.
I have reviewed the income and expense statements. I am going to order that Mr. Kean pay to Mrs. Kean as child support the sum of $600.00 per month, payable in semi-monthly installments of $300.00 each on the 1st and 15th day of each month, the first payment being due and payable retroactive to the date of the filing of Mrs. Kean's reconventional demand.
I will further order that he maintain the child on policies of medical, dental and hospitalization insurance which are available through the group plan of his law firm, or that he otherwise maintain the child on policies of insurance.
I will further order that he pay all costs of transportation in the exercise of his visitation rights.
That leaves remaining Mrs. Kean's claim for alimony pendente lite. Of course, she is not entitled to post-divorce *1160 alimony. And under the circumstances the Court believes that Mrs. Kean made a prompt and rapid adjustment in Louisiana. She has work skills, she has obtained employment, she has a nice job and she got one job immediately almost immediately after she returned to Baton Rouge, and a better one, or a promotion immediately thereafter almost. So, under the circumstances, the Court does believe that Mrs. Kean had the capacity and capability of making her own way and providing for her own needs, and the Court will deny her claim for alimony pendente lite.
I will order that an income assignment order be imposed herein pursuant to R.S. 46:236.3, said order is not to become effective unless there is a default for a period of thirty days or more and upon further compliance with the provisions of said act.
Further, insofar as any current arrearages are concerned by virtue of the retroactivity of the judgment, Mr. Kean is to be given credit for any amounts heretofore paid, and if any amount is not paid, he is given a period of ninety days within which to remedy the default prior to the imposition of any further proceedings leading towards the imposition of the income assignment.
The appellant argues that La.C.C. art. 131(K) does not apply to the instant case to remove the presumption in favor of joint custody because there was no prior award of joint custody in Louisiana.
La.C.C. art. 131(K) states in pertinent part:
... when an award of joint custody has been made to parents domiciled in the state of Louisiana and either parent changes his or her domicile to another state, the presumption that joint custody is in the best interest of a child shall cease to exist.
It would not be logical to follow the appellant's request because La.C.C. art. 131(K) draws the distinction based on one parent living in a state other than Louisiana, not on the prior award of joint custody. However, even if the presumption of joint custody applied, it was more than rebutted in this case.
Much of the appellee's arguments are centered on the maintenance and property settlement provisions of the separation agreement. These issues were not litigated in the court below and are not before us on appeal. We make no determination as to the validity of the separation agreement in these regards.
The judgment of the trial court finding mutual fault in the break-up of the marriage is reversed. Fault is assessed solely against the appellee. The remainder of the judgment is affirmed.
All costs of this appeal are assessed against the appellant.
REVERSED IN PART, AFFIRMED IN PART AND RENDERED.
FOIL, J., concurs in the result.