602 So.2d 330 (1992)
Judith Anne Koby MILLER
v.
Kenneth Victor MILLER.
Kenneth Victor MILLER
v.
Judith Anne KOBY, wife of Kenneth Victor Miller.
Nos. 91-CA-2209, 91-CA-2210.
Court of Appeal of Louisiana, Fourth Circuit.
June 30, 1992.
*331 Richard L. Ducote, Fine & Associates, New Orleans, for appellant.
Steven R. Scheckman, New Orleans, for appellee.
Before LOBRANO, PLOTKIN and LANDRIEU, JJ.
PLOTKIN, Judge.
Appellant Judith Miller seeks review of three aspects of a trial court judgment in this domestic dispute. First, she challenges the ruling which granted her ex-husband, appellee Kenneth Miller, visitation with the children of the marriage Jordan, now 9, and Hannah, now 5. Second, she appeals the trial court's finding that the two parties were mutually at fault in causing the break-up of the marriage. Third, she contests the trial court's decision to maintain jurisdiction over the case in Louisiana under the Uniform Child Custody Jurisdiction Act (UCCJA). We affirm the trial court judgment in all respects.

FACTS:
On October 20, 1987, Ms. Miller filed a petition for separation, alleging physical abuse by Mr. Miller. The trial court initially entered a consent judgment on April 15, 1988 granting the parties joint custody of the two minor children. The consent judgment named Ms. Miller domiciliary parent and included a child support award.
On May 11, 1988, Mr. Miller filed a Petition for Divorce, citing separation without reconciliation for more than a year. In answering the petition, Ms. Miller alleged that Mr. Miller had sexually abused Hannah; Ms. Miller also sought permanent alimony. At the same time, she filed a Petition for Domestic Abuse Assistance, accusing Mr. Miller of sexually abusing Hannah and of physically abusing her. That petition resulted in a restraining order preventing Mr. Miller from visiting with his children and an order awarding Ms. Miller "temporary sole custody" of the children. The two cases were consolidated on June 12, 1989.
On July 13, 1989, Mr. Miller filed an answer and reconventional demand to the Petition for Domestic Abuse Assistance, denying Ms. Miller's accusation concerning his alleged sexual abuse of Hannah and requesting that his custody and visitation rights be reinstated. Mr. Miller also requested a court-ordered examination of all parties. A judgment of divorce was granted to Mr. Miller on December 5, 1989.
On December 12, 1989, the court reinstated limited supervised visitation rights to Mr. Miller, conditioned on his agreement to submit to therapy. Then, on December 23, 1989, Mr. Miller was awarded certain supervised visitation over the Christmas holidays.
On February 16, 1990, Ms. Miller filed a "Petition for Sole Custody and Termination of Visitation Custody" in Indiana, where she had moved without court permission after receiving the temporary sole custody order. In her petition filed in the Indiana court, Ms. Miller again alleged that Mr. Miller had sexually abused his daughter. The Indiana court declined jurisdiction and dismissed Ms. Miller's action on May 14, 1990, stating that it was "most inadequately informed" about the cause of action pending before Civil District Court here in Louisiana and noting that the same matters were at issue in both cases.
On April 27, 1990, Ms. Miller filed a motion to terminate Mr. Miller's visitation *332 rights in the Louisiana court, requesting findings of fact. On June 1, 1990, the trial court appointed Valerie Wolf, B.C.S.W., as Mr. Miller's therapist, and issued an order holding Ms. Miller's attorney, Richard Ducote, in contempt of court for interfering with the court's prior visitation order. On June 1, 1990, the court appointed Alan Klein, Ph.D. to evaluate all parties pursuant to the motion filed by Mr. Miller. On October 1, 1990, Ms. Miller filed a rule for alimony and modification of child support.
Trial of the matter was held on December 17 and 18, 1990. On December 28, 1990, the trial court issued a judgment granting Ms. Miller sole custody of the minor children and denying her request for an increase in child support and for permanent alimony. Finally, on February 14, 1991, the trial court entered a judgment granting Mr. Miller six months of supervised visitation, followed by unsupervised, then unsupervised overnight visitation. The trial judge also ordered all parties to seek psychotherapy and found both Mr. and Ms. Miller at fault in the breakup of the marriage. Furthermore, the trial court maintained jurisdiction over the case in Louisiana under the UCCJA. In her brief reasons for judgment, the trial judge stated that she "does not believe that Hannah Miller was molested by her father."

MOLESTATION ALLEGATIONS:
Ms. Miller seeks reversal of the judgment which reinstated Mr. Miller's visitation rights, claiming that the trial judge was manifestly erroneous in concluding that Hannah had not been molested by her father.
At trial, the judge heard the testimony of both Mr. and Ms. Miller, as well as expert testimony from the court-appointed psychologist, Dr. Klein, and from Mr. Miller's court-appointed therapist, Ms. Wolf. Deposition testimony from two of Hannah's therapists, Linda Connor and Dr. Dan Linkenhoker, was also presented. Both Dr. Klein and Ms. Wolf testified that they did not believe that Mr. Miller had sexually abused Hannah, while both Ms. Connor and Dr. Linkenhoker stated by deposition that they believed that Hannah had in fact been molested by her father.
In Louisiana, a trial court's findings of fact based on decisions to credit the testimony of one witness or of one set of witnesses over the testimony of another are entitled to "great deference" since "only the factfinder can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener's understanding and belief in what is said." Rosell v. ESCO, 549 So.2d 840, 844 (La.1989). In fact, a factfinder's decision on credibility issues "can virtually never be manifestly erroneous or clearly wrong." Id. at 845. The same rule applies in cases involving "two permissible views of the evidence." Id. at 844. When the record reveals conflicts in testimony, but also "furnishes a reasonable factual basis for the trier of fact's finding," a trial court judgment may not be reversed "even though the appellate court may feel its own evaluations and inferences are as reasonable." Canter v. Koehring Co., 283 So.2d 716, 724 (La. 1973). In the absence of a finding of manifest error, appellate courts are bound to affirm the decision of the factfinder. Rosell, 549 So.2d at 844.
In reviewing contrasting expert testimony, the trier of fact has the responsibility "to determine which evidence is the most credible." Sistler v. Liberty Mutual Ins. Co., 558 So.2d 1106, 1111 (La.1990). In the instant case, the trial judge concluded that the opinions of the court-appointed expert witnesses were more credible than the opinions of Ms. Miller's expert witnesses. After reviewing the entire record, we find no manifest error in that decision.
Ms. Miller argues in brief that the above rules giving deference to the trial court's decision on this issue should not apply in this case. In support of this position, she cites Schwartz v. Bourgeois, 422 So.2d 1176 (La.App. 4th Cir.1982), writ denied 429 So.2d 153 (La.1983), in which this court refused to apply the manifest error rule to a trial court decision based solely on pleadings and depositions. However, the trial court's decision in the instant case is based on a combination of live witnesses *333 and deposition testimony. In fact, the testimony which the trial court chose to believe was all live testimony. Additionally, the Louisiana Supreme Court specifically referred to expert deposition testimony in Sistler, saying that the rule that great deference is to be accorded to the trial court's factual findings is based on both the allocation of functions between the three tiers of this state's court system and "the trial court's opportunity to evaluate live witnesses or to evaluate a mixture of deposition and live testimony." Thus, the exception to the manifest error rule established in Schwartz does not apply.
Ms. Miller also contests the trial court's decision to credit the testimony of Mr. Miller's therapist and the court-ordered psychologist over the testimony of Hannah's therapist, arguing that the testimony of a treating therapist is entitled to greater weight than that of a psychologist who examined Hannah only for purposes of litigation. Celestine v. U.S. Fidelity & Guaranty Co., 561 So.2d 986, 990 (La.App. 4th Cir.1990). However, Ms. Miller's argument ignores the fact that Ms. Wolf is Mr. Miller's therapist and thus is entitled to greater weight than her witnesses under the exact same rule she cites to give her own witnesses more credibility. In fact, the record reveals unequivocally that neither Dr. Linkenhoker nor Ms. Conner examined Mr. Miller at any length. Dr. Linkenhoker admitted in his deposition that further information about Mr. Miller would have been helpful to him. Additionally, both of Ms. Miller's witnesses admitted that their evaluation of Hannah were performed a considerable period of time after the alleged incident, and indicated that they would have been more reliable had they been done sooner.
In the face of such conflicting interests, this court is bound by the trial court's determination on this issue. Accordingly, the judgment granting Mr. Miller visitation with his children is affirmed.

MUTUAL FAULT:
Ms. Miller contests the trial court's decision finding both parties at fault in the break up of the marriage and denying Ms. Miller permanent alimony. She claims that Mr. Miller failed to prove that she was guilty of any of the grounds for separation listed in former La.C.C. art. 138adultery, habitual intemperance, excesses, cruel treatment, outrages which make living together insupportable, or abandonment. See Brewer v. Brewer, 573 So.2d 467, 467 (La.1991).
In the instant case, Mr. Miller admits that he was physically abusive on occasion. Thus, there is no question about his fault in the termination of the marriage. However, the record also reveals that Ms. Miller was not without fault in causing the marital problems. Mr. Miller testified that he and his wife occasionally engaged in "pushing and shoving" contests, and that he felt that Ms. Miller sometimes "provoked" his violence, although he never thought that his violence was justified. He stated that his wife's "method of arguing was to come right at you and stay right on top of you," which sometimes caused him to push her away. Trial transcript, Vol. I, page 24. Mr. Miller also stated that his wife had hit him in the back of the head while he was cleaning out a closet and that she had thrown a vase at him and had thrown hot coffee on him. Mr. Miller claims that Ms. Miller used a lot of obscene language against him, and that she would "foam at the mouth sort of like she had no control of her saliva, scream at me, lose control." Id. at page 280.
Ms. Miller denied that she had ever been abusive to Mr. Miller, but admitted on questions from Mr. Miller's attorney that she had told her husband she was dissatisfied with their marriage. She also admitted telling a therapist in Mr. Miller's presence that she was concerned that Mr. Miller might have homosexual tendencies. She later admitted that that action could have a "devastating effect" on her marriage.
Mr. Miller's therapist, Ms. Wolf, testified that Mr. Miller believed that he had been victimized by his wife, "largely emotionally," in the following ways: "not agreeing with him on things, demeaning him, putting him down, isolating the children away from him, those kinds of things." Id. at page *334 258. Also in "[c]onstant arguing, not accepting his point of view, not going along with things he wanted to do." Id. Other types of "victimization" related to Ms. Wolf by Mr. Miller included throwing things at him, calling him names, and engaging in "screaming fights." Id.
Dr. Klein, the court-appointed psychologist, testified that Mr. Miller's aggressiveness toward his wife was "a very direct response to Mrs. Miller's provocativeness." Id., Vol. II, page 35. He stated that Mr. Miller has good control of his impulses and is unlikely to strike out at someone unless he is provoked.
Although a finding that a spouse was at fault in causing the termination of a marriage must be based on something more than "fault in a generic sense, i.e., imperfection," we believe that the trial court judgment finding the parties in this case mutually at fault in causing the break up of the marriage is supported by the record. The trial judge failed to state the exact grounds for finding Ms. Miller at fault; however, the record reveals that the trial judge could reasonably have concluded that Ms. Miller was guilty of cruel treatment of her husband. Thus, the trial court judgment denying Ms. Miller permanent alimony is affirmed.
UCCJA:
LSA-R.S. 13:1702 provides, in pertinent part, as follows:
A. A court of this state which is competent to decide child custody matters has jurisdiction to make a child custody determination by initial or modification decree if:
(1) This state (i) is the home state of the child at the time of commencement of the proceeding, or (ii) had been the child's home state within six months before commencement of the proceeding and the child is absent from this state because of this removal or retention by a person claiming his custody or for other reasons, and a parent or person acting as parent continues to live in this state; or
(2) It is in the best interest of the child that a court of this state assume jurisdiction because (i) the child and his parents, or the child and at least one contestant, have a significant connection with this state, and (ii) there is available in this state substantial evidence concerning the child's present or future care, protection, training, and personal relationships, or
. . . . .
(4)(i) It appears that no other state would have jurisdiction under prerequisites substantially in accordance with Paragraphs (1), (2), or (3), or another state has declined to exercise jurisdiction on the ground that this state is the more appropriate forum to determine the custody of the child, and (ii) it is in the best interest of the child that this court assume jurisdiction.
In maintaining jurisdiction in the Louisiana court under the above provisions, the trial judge stated as follows:
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that this Court shall maintain continuing jurisdiction over this matter pursuant to the Uniform Child Custody Jurisdiction Law (UCCJL), R.S. 13:1700 et seq. because it is in the best interest of the minor children that this Court maintain continuing jurisdiction due to the significant connection between the children and parents with this state and before this court (R.S. 13:1702A(2)). The Court further finds that Judith Anne Koby Miller unilaterally removed the children to the State of Indiana without Court approval during the pendency of this matter and subsequently attempted to litigate the issue of custody before the courts of Indiana, and without notifying the Indiana Court of the pendency of these proceedings before the Civil District Court for the Parish of Orleans (R.S. 13:1700A(1) and (5)). The Court further finds that it is necessary to maintain continuing jurisdiction over this matter to discourage continuing controversies over the children's custody and visitation rights in the interest of greater stability of the home environment and of secure family relationships for the children. (R.S. 13:1700A(4)); and, because this Court can best decide any future disputes in this case in the interest of the children given the significant evidence that has been adduced before this Court. (R.S. 13:1700A(2) and (3)).
*335 Ms. Miller claims that the trial court judgment cited above is clearly erroneous because Indiana is now the "home state" of the children. She also contests the trial judge's statement that the children have "significant connections" with the state, citing the fact that the children have both paternal and maternal relations in Indiana and that their teachers and therapists are in Indiana.
However, Ms. Miller's arguments are misplaced; the fact that the children also have "significant connections" with another state does not mean that they do not have "significant connections" with Louisiana. In fact, the record shows that the children do have significant connections in Louisiana since their father resides here and Louisiana was the "home state" of the children at the time these proceedings were commenced. Additionally, as the trial judge notes, Civil District Court in Orleans Parish has adduced significant evidence in this case, all of which continues to bear on the custody issues. Finally, Ms. Miller's protestations to the contrary notwithstanding, the record indicates that she did in fact act in bad faith in removing her children to another state without court permission during the pendency of this action and in seeking to litigate the exact issues being considered by this court in the Indiana court without informing that court of the pendency of the action here. Furthermore, the Indiana court has previously declined to exercise jurisdiction in this matter.
Thus, the trial court judgment finding that the Louisiana court should retain continuing jurisdiction on the custody matters because it is in the best interest of the children and because the children have "significant connections" with the state is not manifestly erroneous. Accordingly, it is affirmed.

CONCLUSION
For the above and foregoing reasons, the trial court judgment is affirmed in all respects.
AFFIRMED.