762 So.2d 130 (2000)
Julie S. PLAUCHE
v.
Dr. and Mrs. Kenneth BELL and Sewerage & Water Board of the City of New Orleans.
Nos. 98-CA-2987, 99-CA-0707.
Court of Appeal of Louisiana, Fourth Circuit.
May 3, 2000.
*132 Lawrence J. Smith, George N. Bischof, Jr., Guy H. Leland, Lawrence J. Smith & Associates, New Orleans, LA, Counsel for Plaintiff/Appellant Julie S. Plauche.
E. Ross Buckley, Jr., Buckley & Hayes, L.L.P., New Orleans, LA, Counsel for Defendant/Appellee State Farm Fire and Casualty Co.
Mary Elizabeth Paltron, Sewerage & Water Board Of New Orleans, New Orleans, LA, Counsel for Defendant-Appellee Sewerage & Water Board of New Orleans.
Michael G. Cordes, Hoffman, Siegel, Seydel, Bienvenu, Centola & Cordes, New Orleans, LA, Counsel for Plaintiffs/Appellees, Dr. And Mrs. Kenneth Bell.
(Court composed of Judge JOAN BERNARD ARMSTRONG, Judge STEVEN R. PLOTKIN, Judge CHARLES R. JONES).
PLOTKIN, Judge.
This appeal presents an issue related to the interpretation of LSA-R.S. 9:3221, which allows a lessor, the owner of immovable property, to transfer responsibility for damages caused by defects on the property to a lessee. Also involved in this appeal is the vicarious liability of an employer for the alleged "active negligence" of its employee. The trial court ruled against the plaintiff, Julie S. Plauche, on both issues. We affirm both judgments.

Facts
Ms. Plauche's injury occurred on February 15, 1995, while she was employed as a receptionist at the Magazine Street Animal Clinic, owned by Dr. Franklin Klimitas. The clinic was located at 1825 Magazine Street, in a building owned by defendants, Dr. and Mrs. Kenneth Bell (hereinafter referred to as "the Bells").
Ms. Plauche claims that she suffered injury while trying to close an iron gate leading from the courtyard area behind the clinic into a common alleyway behind the courtyard. The injury occurred when Ms. Planche accompanied Kelvin Dugue, a meter reader for the defendant, Sewerage and Water Board of New Orleans (hereinafter referred to as "S&WB"), into the alleyway in order to allow him to read the meters located there. When they reentered the courtyard, Mr. Dugue attempted to assist Ms. Plauche in her efforts to close the gate, which did not properly fit into the frame. When Mr. Dugue pulled a vertical bar on the gate, the bar separated from the gate, hitting Ms. Planche in the head.
Ms. Planche filed the instant suit against the Bells and the S&WB, seeking recovery of damages incurred as a result of her alleged injury. Dr. Klimitas was later added as a third-party defendant, but was then released on motion for summary judgment because Ms. Planche's exclusive remedy against him is workers' compensation. Thereafter, the Bells and their insurer, State Farm Fire & Casualty Co., *133 were also released on motion for summary judgment. Following a trial against the only remaining defendant, S&WB, the trial court entered judgment dismissing Ms. Plauche's suit. Ms. Planche filed two appeals: (1) an appeal of the granting of the motion for summary judgment in favor of the Bells and their insurer, State Farm, and (2) an appeal of the judgment following the trial in favor of S&WB. The appeals were later consolidated on Ms. Plauche's motion.

Liability of the Bells
Under the most recent amendments to the summary judgment law, La. C.C.P. art. 966, this court reviews summary judgment de novo, considering the same standards applied by the trial court in deciding a motion for summary judgment. La. C.C.P. art. 966(B) requires the party seeking summary judgment, who has the burden of proof, to prove two things: (1) that "no genuine issues as to material fact" exist, and (2) that he "is entitled to judgment as a matter of law." In order to meet his burden of proof, the mover is not required "to negate all essential elements of the adverse party's claim, action, or defense, but rather to point out to the court that there is an absence of factual support for one or more elements essential to the adverse party's claim, action, or defense." La. C.C.P. art. 966(C)(2). If the movant meets its burden of proving these two issues, the burden shifts to the party opposing the motion to "produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial." Id. Summary judgment is now a favored procedure in Louisiana. La. C.C.P. art. 966(A)(2).
The trial court judgment granting the motion for summary judgment in favor of the Bells is based entirely on LSA-R.S. 9:3221, which provides as follows:
The owner of premises leased under a contract whereby the lessee assumes responsibility for their condition is not liable for injury caused by a defect therein to the lessee or anyone on the premises who derives his right to be thereon from the lessee, unless the owner knew or should have known of the defect or had received notice thereof and failed to remedy it within a reasonable time.
(Emphasis added.) The lease between the Bells and Dr. Klimitas contained the following provision:
Lessee assumes responsibility for the condition of the premises and Lessor will not be responsible for damages caused by leaks in the roof, by bursting of pipes, by freezing or otherwise, or by any vices or defects of the leased property, or the consequences thereof, except in the case of positive neglect or failure to take action toward remedying of such defects within reasonable time after having received written notice from Lessee of such defects and the damage caused thereby. Should Lessee fail to promptly so notify Lessor, in writing of any such defects, Lessee will become responsible for any damage resulting to Lessor or other parties.
(Emphasis added.)
In support of their motion for summary judgment in this case, the Bells attached excerpts from Ms. Plauche's deposition, excerpts from the deposition of Dr. Klimitas along with a copy of their lease with Dr. Klimitas, excerpts from Mrs. Bell's deposition, and Dr. Bell's affidavit. Dr. Klimitas testified that he had the only key to the lock on the gate in question, and that he knew that the vertical bar had been separated from the rest of the gate prior to Ms. Plauche's accident. Moreover, he stated that he was the only tenant with access or use of either the courtyard or the gate in question. However, he said that he had not reported the broken bar to the Bells because he thought it could serve as an emergency exit in case of fire. Dr. Klimitas said that he had informed his employees of the problem. In fact, he said that he did not report the problem to the Bells until after Ms. Plauche's accident, several months after he discovered it. *134 When he told the Bells about the problem, Dr. Klimitas said, they fixed it within a week.
Mrs. Bell stated in her deposition that she had not used or opened the gate since the building had been leased to Dr. Klimitas. Moreover, her testimony supported Dr. Klimitas' statements that he was the only tenant with access or use of either the courtyard or the gate in question. Mrs. Bell claimed that the gate was repaired on the same day Dr. Klimitas had reported it to her. Dr. Bell's affidavit asserted that his wife was the managing spouse for the property leased to Dr. Klimitas. As the managing spouse, Mrs. Bell is the one contacted by tenants and lessees concerning property leased from the couple, he said. Moreover, he stated that Mrs. Bell handles all problems arising on the couple's rental properties, and that he never knew of any defects or problems with the gate, the iron bar, or the masonry that are the subject of this lawsuit.
Moreover, the lease agreement itself was included in the Bells' motion for summary judgment. Attached to the lease is a survey of the property leased, which indicates that the courtyardand, therefore, the gateare part of the leased premises.
Our de novo review of the above evidence convinces us that the Bells submitted sufficient evidence to prove that no genuine issues of material fact exist concerning their responsibility for repairing the gate, and that they are entitled to judgment as a matter of law. Thus, the burden shifted to Ms. Plauche.
We note first that no evidence is attached to the copy of Ms. Plauche's opposition to the Bell's motion for summary judgment in the record. Rather than attempt to present evidence in opposition to the motion for summary judgment, Ms. Plauche attempted to raise several factual issues in her memorandum to the trial court and in her brief to this court. Although Ms. Plauche entitled a portion of her opposition memorandum "Disputed Facts," Ms. Plauche admitted in the memorandum that most of the facts discussed in that section are not disputed. Ms. Plauche then devoted the majority of her memorandum to discussion of why the Bells should be held responsible for the defective gate. Pointing to the fact that the Bells, not Dr. Klimitas, eventually ordered the repairs to the gate, Ms. Plauche claims that one of two things should be inferred from that fact. First, she asserts that the clause shifting responsibility to the lessee was simply a "clause-of-convenience for use as a legal defense." Alternatively, she claims that the gate was not a part of the "leased premises."
However, we find no merit in either of Ms. Plauche's arguments. Regarding her first argument, LSA-R.S. 9:3221 clearly allows the owner of leased premises to avoid liability by shifting the responsibility for the condition of the leased premises to the lessee "unless the owner knew or should have known of the defect or had received notice thereof and failed to remedy it within a reasonable time." The lease provision is consistent with that statute. Moreover, neither the statute nor the lease required Dr. Klimitas to actually perform repairs on the leased premises. The statute and the lease simply shifted responsibility to the lessee for damages caused by defects that have not been reported to the lessor. However, if the defect has been reported to the lessor and the lessor has not repaired the defect within a reasonable time, the lessor is responsible for damages. Accordingly, neither the statute nor the lease is vague.
Regarding Ms. Plauche's second argument, the lease agreement that is a part of the record in this case identifies the "described premises" that Dr. Klimitas leased as "Commercial space, first floor only, 1825 Magazine Street, New Orleans, Louisiana." On the basis of that description, Ms. Plauche claims that the gate between the courtyard and the common alleyway is not a part of the leased premises. However, the documents attached *135 to the motion for summary judgment reveal that the courtyard and the gate were a part of the leased premises. The survey attached to the lease agreement indicates that the courtyard and the gate are part of the leased premises. Dr. Klimitas stated that he purchased the lock that was on that gate and that he has had the only key to that lock since he leased the premises. The testimony also revealed that Dr. Klimitas was the only tenant given access to and use of that courtyard. Further, Mrs. Bell testified that she had only gone into the courtyard one time since she leased the property to Dr. Klimitas because he didn't "like people back there." These statements indicate that Dr. Klimitas had exclusive control of the courtyard and the gate. The evidence presented is sufficient to carry the Bells' burden of proof that the accident occurred on the "leased premises," especially in the absence of any evidence to the contrary presented by Ms. Plauche.
Because our de novo review reveals that the Bells carried their burden of proof on summary judgment, and that, when the burden shifted to Ms. Plauche, she failed to "produce factual support sufficient to establish that [s]he will be able to satisfy her evidentiary burden of proof at trial." La. C.C.P. art. 966(C)(2). Accordingly, we affirm the granting of the motion for summary judgment in favor of the Bells.

Liability of the S&WB
Ms. Plauche claims that the trial court improperly dismissed her case against the S&WB because the S&WB is clearly liable for the actions of its employee, Mr. Dugue, who struck Ms. Plauche on the head with an iron bar. However, as Ms. Plauche herself notes in brief, her description of the events surrounding her alleged injury and Mr. Dugue's description of those same events differ. The following standard of review applies to cases in which the trial court is faced with differing versions of a story:
In Louisiana, a trial court's findings of fact based on decisions to credit the testimony of one witness or of one set of witnesses over the testimony of another are entitled to "great deference" since "only the factfinder can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener's understanding and belief in what is said." Rosell v. ESCO, 549 So.2d 840, 844 (La.1989). In fact, a factfinder's decision on credibility issues "can virtually never be manifestly erroneous or clearly wrong." Id. at 845. The same rule applies in cases involving "two permissible views of the evidence."

Id. at 844. When the record reveals conflicts in testimony, but also "furnishes a reasonable factual basis for the trier of fact's finding," a trial court judgment may not be reversed "even though the appellate court may feel its own evaluations and inferences are as reasonable." Canter v. Koehring Co., 283 So.2d 716, 724 (La.1973). In the absence of a finding of manifest error, appellate courts are bound to affirm the decision of the factfinder. Rosell, 549 So.2d at 844.
Miller v. Miller, (La.App. 4 Cir.1992), 602 So.2d 330, 332.
In this case, Ms. Plauche stated that she told Mr. Dugue not to touch the gate, but that he disregarded her instructions and grabbed it anyway several minutes later. The testimony of Susan Brauner concerning Ms. Plauche's later description of the accident supports Ms. Plauche's statements. However, Mr. Dugue stated that he was already pulling on the gate when Ms. Plauche told him not to touch it. Mr. Dugue's statement was supported by the testimony of Marilyn Magendie, an investigator for the S&WB, who talked to Ms. Plauche on the day of the accident. Ms. Magendie stated that Ms. Plauche told her that Mr. Dugue was already pulling on the bar at the time she told him not to touch it, and that the accident was not Mr. Dugue's fault, it was Dr. Klimitas' fault. Moreover, everyone who testified indicated that Mr. Dugue had *136 no way of knowing about the defect in the gate until after he grabbed the bar because Dr. Klimitas had intentionally placed the bar back on the gate in a manner to made it appear attached.
In her reasons for judgment, the trial court found as follows: "It was not negligent for Mr. Dugue, the board employee[,] to pull the gate in an attempt to assist Ms. Plauche in closing the gate." Since the record "furnishes a reasonable factual basis for the trier of fact's finding," this court is constrained from reversing the trial court's decision.
Ms. Plauche also points to Dr. Klimitas' testimony that the bar was originally broken by a S&WB employee as evidence that the S&WB should be held liable for her injuries. Dr. Klimitas stated at trial that "the bar had been dislodged when some of the fellows had read the meter, previous to the incident that we are discussing today." He later explained as follows:
A. After the fellows had gone through and read the meters, I went back out there to put the gate, to reset the gate, and to put the lock on, and the bar was either down on the ground or laying against the freezer or something like that, it was away from the gate.
Q. Prior to the use of that gate by the Sewerage and Water Board meter reader, to the best of your knowledge, was that bar in place?
A. Yes.
In her reasons for judgment, the trial court stated as follows concerning this issue:
Nor was there evidence of negligence on the part of the Board in initially breaking the gate. Even if there were, the replacing of the loose bar back into the gate rather than the actual breaking caused the damage. Had Dr. Klimitas left the bar out of the gate, we wouldn't have heard this case.
We find no manifest error in this finding by the trial court. Even assuming that a S&WB employee initially caused the damage to the gate, Mr. Dugue could not have struck Ms. Plauche while pulling the bar out of the gate if the bar had not been reset in the gate to make it appear that the damage did not exist. Accordingly, the trial court judgment dismissing Ms. Plauche's case against the S&WB is affirmed.
For the above and foregoing reasons, both the trial court's granting of the motion for summary judgment in favor of the Bells, and the trial court's dismissal of Ms. Plauche's suit against the S&WB are hereby affirmed.
AFFIRMED.