11 JAMES F. McKAY III, Judge.
The appellant, Tri Star Construction Co., Inc. (Tri Star), appeals the trial court’s judgment of July 27, 2001 granting the defendants’, The Housing Authority of New Orleans (HANO), Yeates and Yeates Architects (Yeates), and Ventana Property Management, Inc. (Ventana), joint motion for summary judgment and dismissing plaintiffs case.
On April 23, 1993, Tri Star, as the general contractor, entered into a construction contract with HANO to replace the roof systems on thirty-five buildings at the C.J. Peete Housing Development[1], for a contract price of one million six hundred fourteen thousand five hundred seven dollars. ($1,614,507.00).[2] On November 25, 1991, HANO had contracted with Yeates as the architect to draft drawings and specifications for the project. HANO’s representative during the early phases of the project was C.J. Brown Property Management, Inc. (C.J. | ¡.Brown), whose successor in interest is Ventana. C.J. Brown was no longer working at the HANO offices nor involved with the project after September 30,1994[3]. As part of the contract Tri Star was to follow the specifications provided by Yeates. During the performance of the construction contract on the C.J. Peete Housing Development, Tri Star encountered a problem with the installation of the flat roof in that water was pooling on the roofs instead of flowing into the drains. On April 21, 1995, HANO terminated Tri Star’s contract for failure to perform the work in accordance with plans and specifications and failure to resolve the pooling problem. Pursuant to this termination, Tri Star filed suit on June 7,1995. HANO filed an exception of no right of action, which was granted by the trial court but *558 which this Court reversed in 1998.[4] In response, on June 5, 2001, the defendants filed a joint motion for summary judgment, which the trial court granted on July 30, 2001; this is a final appealable judgment pursuant to La. C.C.Pro. art. 1915(B).
The issues for review before this Court are whether or not the trial court erred in granting the defendants’ joint motion for summary judgment and whether or not the trial court erred in failing to hold that the plaintiff is entitled to statutory immunity pursuant to La. R.S. 9:2771.[5]
| ¡¡Under the most recent amendments to the Summary Judgment law, La. C.C.P. art. 966, this Court reviews summary judgment de novo, considering the same standards applied by the trial court in deciding a motion for summary judgment. Plauche v. Bell, 99-0707, (La.App. 4 Cir. 5/3/00), 762 So.2d 130, 133. Generally, a Motion for Summary Judgment may only be granted “[ajfter adequate discovery or after a case is set for trial.” La. C.C.P. art. 966(C)(1). La. C.C.P. art. 966(B) requires the party seeking summary judgment, who has the burden of proof, to show two things: (1) that “no genuine issues as to material fact” exist, and (2) that he “is entitled to judgment as a matter of law.” In order to meet his burden of proof, the mover is not required “to negate all essential elements of the adverse party’s claim, action, or defense, but rather to point out to the court that there is an absence of factual support for one or more elements essential to the adverse party’s claim, action, or defense.” La. C.C.P. art. 966(C)(2). If the movant meets its burden of proving these two issues, the burden shifts to the party opposing the motion to “produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial.” Id. Summary judgment is now a favored procedure in Louisiana. La. C.C.P. art. 966(A)(2).
The plaintiff complains that the trial court erred in granting the defendants’ joint motion for summary judgment concluding that no genuine issues of material fact existed. Plaintiff essentially argues that the trial court erred in not finding that there were genuine issues of facts in question, which would preclude a granting of a motion for summary judgment. The plaintiff asserts that the trial court failed to take into consideration the plaintiffs countervailing affidavits to those that the defendants presented to the court.
|4The affidavit of Cynthia Yeates sets forth the instances in which Tri Star failed to perform the work in accordance with the plans and specifications which Yeates provided to Tri Star. The failure to perform is predicated on Tri Star’s failure to verify site conditions prior to undertaking work on the project in violation of the “General Conditions of the Contract for Construction”, Clause 2, Paragraph (e), which provides:
*559 The Contractor shall lay out the work from the base lines and benchmarks indicated on the drawings and be responsible for all lines, levels, and measurements of all work executed under the contract. The Contractor shall verify the figures before laying out the work and will be held responsible for any error resulting from its failure to do so.
The affidavits presented to the court are well founded and documented by the record thereby supporting the defendants’ motion for summary judgment. Clearly, the trial court was presented with countervailing affidavits which in its judgment favored the defendants’ position resulting in its ruling in the defendants’ favor. Plaintiff failed to produce factual support sufficient to establish that it would be able to satisfy its evidentiary burden of proof at trial. Hence, Plaintiffs countervailing expert affidavits did not create a genuine issue of fact for trial. After carefully reviewing the record we concur with the trial court in this matter. There is no merit to plaintiffs argument.
Plaintiff also asserts that it is entitled to immunity pursuant to La. R.S. 9:2771. Plaintiff argues that there were flaws in Yeates’ original design to resurface the flat roofs, and that pursuant to La. R.S. 9:2771, the contractor is not liable for the defects caused by this flawed design.
In construction contracts, Louisiana law implies that the contractor will construct the work in a good and workmanlike manner, the work will be suitable | ¿for its intended purpose, and the work will be free of defects in workmanship or materials. Winford Co. v. Webster Gravel and Asphalt, Inc., 571 So.2d 802 (La.App. 2 Cir.1990). A contractor is not responsible, however, for defects caused by faulty or insufficient specifications furnished to the contractor. La. R.S. 9:2771; Tex-La Properties v. South State Ins. Co., 514 So.2d 707 (La.App. 2 Cir.1987). If the defect in the construction is caused by faulty or insufficient plans or specifications, the contractor is immune from liability upon constructing in compliance therewith, provided the specifications are not provided by him. Winford v. Webster, supra.
Plaintiffs reasoning for claiming statutory immunity is misguided. Despite plaintiffs complaint that the construction contract documents and specifications were unclear and ambiguous, the trial court made a factual determination and correctly held that the contract at issue was a performance specifications contract which contained provisions standard to a re-roofing contract.
The defendants argue that plaintiffs failure to follow the technical specifications in the contract required that Tri Star install a roofing system on the flat roofs with a minimum 1/8" slope per foot and its failure to do so resulted in the ponding of water on the roofs.
The technical specifications in Section 0700 expressly provide that the architect’s drawings are diagrammatical and may not show all the layers required to provide a 1/8" slope. Section 0700, 2.23(a) specifically required that the contractor shall provide as many layers of insulation as are required to achieve the minimum slope of 1/8" per foot. Furthermore, as provided by this section, the technical specifications provided that all depressions, holes, deformities, etc., shall be made smooth by the contractor prior to roof application. Section 0700, 3.11 |fiprovides that the contractor is to adjust the height of the new tapered insulation as required to align properly with the height of the existing roof drain.
*560 These technical specifications were the paradigmatic performance specifications since they set forth an objective to be achieved, installation of a flat roof with a minimum 1/8" slope and smoothing all depressions, holes, and , deformities by the contractor prior to roof installation. These specifications clearly indicate that the onus was upon the contractor to exercise expertise and ingenuity to determine how the objective was to be achieved. The contractor failed to properly follow the required specifications, which resulted in pooling on the respective roofs. Furthermore, Tri Star failed to resolve the pooling problem thereby, breaching its obligations under contract, resulting in the termination of its contract with HANO with cause.
Clearly, the contract between the plaintiff and HANO was a performance specification contract and is therefore not entitled to statutory immunity pursuant to La. R.S. 9:2771. Plaintiffs argument is without merit.
For the above and foregoing reasons, we find no error in the judgment of the trial court. Therefore, this judgment is affirmed.
AFFIRMED.

. Known as Project No. 48 P001 915.

. The work to be performed under the contract included among other work, replacing roof systems on thirty-five buildings. Twenty of the roof systems were sloped/pitch roof systems consisting of asbestos shingles that were replaced with asphalt fiberglass shingles. The remaining fifteen buildings had flat roof systems consisting of a six-inch structural concrete roof decking covered with Vermiculite lightweight concrete and four ply coal tar pitch and slag ballast. These were to be replaced with a tapered roof system manufactured and pre-cut by an approved supplier, having dimensions specified in the contract documents, as verified by the contractor to the extent physically possible by actual filed check. The architect chose this tapered insulation system. This system would not work unless the contractor addressed the deck holes, depressions and varying slopes. Tri Star allegedly did not discover the conditions of the roof until the existing vermiculite was removed.

.At the time of the contract for the project C.J. Brown was the authorized representative of HANO and managed the HANO properties.

. Case No. 97-CA-1167.

. 9:2771. Non-liability of contractor for destruction or deterioration of work
No contractor, including but not limited to a residential building contractor as defined in R.S. 37:2150.1(9), shall be liable for destruction or deterioration of or defects in any work constructed, or under construction, by him if he constructed, or is constructing, the work according to plans or specifications furnished to him which he did not make or cause to be made and if the destruction, deterioration, or defect was due to any fault or insufficiency of the plans or specifications. This provision shall apply regardless of whether the destruction, deterioration, or defect occurs or becomes evident prior to or after delivery of the work to the owner or prior to or after acceptance of the work by the owner. The provisions of this Section shall not be subject to waiver by the contractor.