MAX N. TOBIAS, JR., Judge.
_jjThe plaintiff/appellant, Max Prejean (“Prejean”), appeals from a summary judgment rendered in favor of the defendant/appellee, Plant Performance Services LLC (“P2S”). For the reasons that follow, we find that the trial court erroneously granted summary judgment. Therefore, we reverse and set aside the judgment and remand the matter to the trial court for further proceedings.
*128 On 25 August 2004, while working on a heat exchanger at the Murphy Oil U.S.A., Inc. (“Murphy”) refinery in Mereax, Louisiana, Prejean was hit in the eye with a wrench when a metal plug blew out of that exchanger, causing permanent, life-altering injuries. At the time of the accident, Prejean was an employee of Maintenance Enterprises, Inc. (“MEI”), a company hired by Murphy to complete one of the final steps of restarting that part of the refinery, known as the ROSE unit, which had been damaged by fire in 2003.
In conjunction with the subsequent renovation of the unit, Murphy assessed the condition of the damaged equipment to determine whether such could be repaired and returned to service. P2S participated in the assessment. On 19 |2January 2004, P2S performed a hydrostatic test on the unit’s Exchanger 108D (“the exchanger”). The test entailed filling the exchanger with water and pressurizing it. P2S contends that it tested the exchange in accordance with Murphy’s specifications.
On 25 August 2004, while working in the ROSE unit, Prejean and his crew discovered a leak at one of the plugs on the north side of the exchanger. Prejean was instructed by his supervisor to tighten that plug at the rear of the exchanger in order to stop the leak.
After other employees removed the insulation from the exchanger, Prejean got on a ladder and started tightening the plug as instructed by his MEI supervisor, Ricardo Salinas. It was a plug that Prejean and his co-workers said was painted, indicating that the heat exchanger was “refurbished” or ready to use as new, as certified by P2S. On the day of the accident, MEI was not repairing the heat exchanger for use again. It was hydrotesting the exchanger that it believed was ready to go into service, based on the test performed in January 2004 by P2S and test results approved by both P2S and Murphy.
Using an 18-inch wrench, Prejean made an approximate quarter clockwise turn of the plug, but more water leaked out. While turning the plug clockwise again, the plug suddenly blew out of the exchanger nozzle, throwing the wrench into his face and causing him to fall to the floor. Prejean timely filed the present action.
|sOn 17 December 2007, P2S filed a motion for summary judgment, alleging that it did not breach its duty to Prejean. It argued that it was only supposed to test the exchanger to some intermediate level to see if the exchanger was salvageable. Alternatively, P2S argued that if it did breach its duty, it was afforded immunity under La. R.S. 9:2771.
On 18 February 2008, the trial court heard the motion for summary judgment, and on 24 March 2008, rendered summary judgment in favor of P2S. In its reasons for judgment, the court believed that Murphy’s contract with P2S did not require P2S to leave the exchanger in a refurbished condition, or ready to be placed back in service. Therefore, the trial court found that P2S was entitled to liability immunity under La. R.S. 9:2771. This timely appeal by Prejean followed.
Under the most recent amendments to La. C.C.P. art. 966, this court reviews .summary judgments de novo, considering the same standards applied by the trial court in deciding a motion for summary judgment. Planche v. Bell, 98-2987, 99-0707, p. 3 (La.App. 4 Cir. 5/3/00), 762 So.2d 130, 133. Generally, a motion for summary judgment may only be granted “[ajfter adequate discovery or after a case is set for trial.” La. C.C.P. art. 966 C(l). La. C.C.P. art. 966 B requires the party seeking summary judgment, who has the burden of proof, to show two things: (1) that “no genuine issues as to material fact” *129 exist, and (2) that he “is entitled to judgment as a matter of law.” In order to meet his burden of proof, the mover is not required “to negate all essential elements of the adverse party’s claim, action, or defense, but rather to point out to the court that there is an absence of factual Usupport for one or more elements essential to the adverse party’s claim, action, or defense.” La. C.C.P. art. 966 C(2). If the movant meets its burden of proving these two issues, the burden shifts to the party opposing the motion to “produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial.” Id.
La. R.S. 9:2771 provides as follows:
No contractor, including but not limited to a residential building contractor as defined in R.S. 37:2150.1(9), shall be liable for destruction or deterioration of or defects in any work constructed, or under construction, by him if he constructed, or is constructing, the work according to plans or specifications furnished to him which he did not make or cause to be made and if the destruction, deterioration, or defect was due to any fault or insufficiency of the plans or specifications. This provision shall apply regardless of whether the destruction, deterioration, or defect occurs or becomes evident prior to or after delivery of the work to the owner or prior to or after acceptance of the work by the owner. The provisions of this Section shall not be subject to waiver by the contractor.
In Tristar Construction Co. v. Housing Authority of New Orleans, 01-2282 (La. App. 4 Cir. 12/11/02), 833 So.2d 556, we affirmed the trial court’s grant of summary judgment, finding that the contractor in question was not entitled to immunity under La. R.S. 9:2771. On appeal, the plaintiff argued that it had presented countervailing affidavits to those filed by the defendant in conjunction with its motion for summary judgment. We stated:
The affidavits presented to the court are well founded and documented by the record thereby supporting the defendants’ motion for summary judgment. Clearly, the trial court was presented with countervailing affidavits which in its judgment favored the defendants’ position resulting in its ruling in the defendants’ favor. Plaintiff failed to produce factual |5support sufficient to establish that it would be able to satisfy its evi-dentiary burden of proof at trial. Hence, Plaintiffs countervailing expert affidavits did not create a genuine issue of fact for trial. After carefully reviewing the record we concur with the trial court in this matter. There is no merit to plaintiffs argument.
Id. at p. 4, 833 So.2d at 559.
The plaintiffs next argument was that the contract in question was ambiguous. We disagreed:
Plaintiffs reasoning for claiming statutory immunity is misguided. Despite plaintiffs complaint that the construction contract documents and specifications were unclear and ambiguous, the trial court made a factual determination and correctly held that the contract at issue was a performance specifications contract which contained provisions standard to a re-roofing contract.
Id. at p. 5, 833 So.2d at 559. Consequently, we affirmed the judgment of the trial court granting summary judgment.
The plaintiff filed a writ of certiorari and/or review with the Louisiana Supreme Court. The Court granted the writ, reversed this court, and denied the motion for summary judgment finding genuine issues of material fact existed. See Tristar Construction Co. v. Housing Authority of New Orleans, 03-0460 (La.4/25/03), 842 So.2d 388.
*130 In Martin v. Boh Bros. Construction Co., LLC, 05-1300 (LaApp. 4 Cir. 6/7/06), 934 So.2d 196, the defendant construction company appealed a judgment rendered after a trial on the merits, finding it liable for the injuries sustained by the plaintiff when she fell on uneven pavement while crossing Tulane Avenue in New Orleans while it was in the process of being repaved. The defendant asserted that it was entitled to statutory immunity provided to contractors by La. R.S. 9:2771 and should be free from fault. We stated:
| ^Although R.S. 9:2771 may provide a shield to contractors for liability to third parties for defects in plans or specifications provided to it, a contractor may not be entitled to statutory immunity under R.S. 9:2771 if it has reason to believe that adherence to the plans and specifications provided to it may create a hazardous condition or unreasonable risk of harm. Recotta Trucking Co., Inc. v. State through DOTD, 573 So.2d 526, 527 (LaApp. 4 Cir.1990). In the present case, the trial court found that it was not merely the presence of the drop-off itself that caused Martin to fall, but the lack of any warning to pedestrians approaching from the Tulane Avenue side of the street that there was a drop-off in the pavement or that the street was being re-surfaced, that constituted an unreasonable risk of harm. Because we review a determination of unreasonable risk of harm (a fact-intensive determination) under the manifest error/clearly wrong standard, we look to whether the determination of the trial court was reasonable in light of the evidence contained in the record on appeal.
Id. at p. 7, 934 So.2d at 200.
Because we found that the defendant’s failure to mark the construction zone or in some way warn pedestrians of the uneven pavement created an unreasonable risk of harm, we held that it was not entitled to the immunity afforded by R.S. 9:2771.
In determining whether P2S was entitled to immunity, the trial court first concluded that it adhered to the plans and specifications provided by Murphy. After reviewing the record, we find a genuine issue of material fact remains. The documents submitted by Prejean do not support P2S’s contention that its work was performed for the sole purpose of determining if the equipment could be repaired or reused. P2S also bases its argument that its standard of testing was “salvagea-bility,” and not based on the contract in evidence that states to “the level of a new installation.”
|7P2S also argues that it is entitled to immunity even though the specifications provided by Murphy were not set forth in written documents. While this may be true, the cases P2S relies on were decided after a trial on the merits and not on summary judgment. In order for the trial court to reach a similar conclusion in this case, it must make credibility determinations after hearing testimony from the witnesses since P2S is not relying on the documents in the record. For that reason alone, summary judgment is inappropriate in the instant matter.
We also note that the 15 September 2003 purchase order from Murphy to P2S includes the following language: “Labor to repair equip, in Rose unit that was damaged by fire.” This supports Prejean’s argument. Again, if this language used by Murphy does not mean what it says, testimony needs to be elicited for a decision to be made. Therefore, we cannot say that P2S followed Murphy’s plans and specifications to as to be entitled to immunity under La. R.S. 9:2771.
Finally, Prejean contends that, even if P2S followed Murphy’s plans and specifica *131 tions, it is not entitled to immunity because it left behind unsafe conditions which lead to an unreasonable risk of harm. Preje-an’s argument is supported by an affidavit from R. Craig Jerner, Ph.D., P.E., a metallurgical engineer. Dr. Jerner examined photographs of the exchanger 108D plug at issue and opined it did not appear to have been properly threaded into the thread-to-let. He stated that this condition may have existed when P2S did the hydrostatic pressure test; it either did not inspect the plug area or did not see the water leakage, and may have improperly performed the pressure test.
Dr. Jerner also stated that another possibility was that the plug was not properly inserted when P2S performed its tests and an air pocket existed (which |she noted was a possibility discussed in Murphy’s own test criteria); the air pocket would have prevented water leakage. The failure of P2S to purge all air from the vessel to be tested led to a false indication of vessel “tightness” and the ability to be reused.
P2S argues that Dr. Jerner’s speculations cannot defeat a motion for summary judgment. However, we find that Dr. Jer-ner’s affidavit serves to create an additional issue of material fact which serves to defeat P2S’s motion. The issues P2S would have us decide require testimony and credibility determinations by the finder of fact.
For those reasons, we reverse and set aside the judgment granting summary judgment and remand the matter to the trial court for further proceedings.
ARMSTRONG, C.J., concurs.
ARMSTRONG, C.J., concurs.
1¶1 respectfully concur in the result reached by the majority.