900 So.2d 262 (2005)
Sharon Sue GREMILLION, Plaintiff-Appellant
v.
Noel John GREMILLION, Defendant-Appellee
Noel John Gremillion, Plaintiff-Appellee
v.
Sharon S. Gremillion, Defendant-Appellee.
Nos. 39,588-CA, 39,589-CA.
Court of Appeal of Louisiana, Second Circuit.
April 6, 2005.
*264 Earl E. Vassar, Jr., for Defendant-Appellant.
Mason L. Oswalt, Monroe, for Plaintiff-Appellee.
Eugene Paul Cicardo, Jr., Pro Se.
*265 W. Kyle Green, for Eugene Paul Cicardo, Jr.
Before STEWART, DREW and MOORE, JJ.
MOORE, J.
This is an appeal from two consolidated divorce actions filed separately in Union Parish by Sharon Sue Gremillion and Noel John Gremillion, respectively. Noel Gremillion appeals that part of the judgment of the trial court that overruled his exception to venue and rendered a judgment awarding Sharon Gremillion temporary spousal support of $1750 per month and permanent spousal support of $1400 per month based upon the finding that Sharon was without fault. For the reasons that follow, we affirm.

Facts
The couple was married on April 19, 1973 and lived in Rapides Parish. Mr. Gremillion worked as an MRI technician earning approximately $3400 per month. Sharon worked as a court reporter until 1996, when she stopped working due to several medical problems, including TIAs (mini-strokes), fibromyalgia, irritable bowel syndrome, migraine headaches, seizure disorder, stroke syndrome, mitral valve prolapse, and carpal tunnel syndrome. She was declared totally disabled in 1999 and receives $856 per month in social security benefits for her disability.
Around the year 2000, Noel began working as a traveling MRI technician so they could see the country. The couple moved to Florida where Sharon's daughter from a previous union lived. As a traveling MRI technician, Noel worked at various hospitals in the U.S. in block periods of two to three months. He earned $35 to $42 per hour, plus $30 per diem, free housing, rental car and health insurance benefits.
Mrs. Gremillion traveled with Mr. Gremillion. In August of 2001, while in New Jersey, Sharon suffered an injury to the back of her head that caused a subdural hematoma that required surgery for removal. After recovery from the surgery, she and Mr. Gremillion moved or returned to Florida in September, 2001 to stay with Mrs. Gremillion's daughter, Leslie.
Around November 6, 2001, a dispute broke out between the daughter and Mrs. Gremillion. The exact nature or events that prompted the dispute is unclear. After her surgery, Mrs. Gremillion apparently became quarrelsome or "irritable" with her daughter, and on the day of the dispute, Leslie told Mrs. Gremillion to leave her house. Mr. Gremillion, who said he was in the bathroom during the dispute, elected to stay with the daughter. Thereafter, he refused to reconcile with his wife. Apparently he continues to live with Leslie.
Meanwhile, Mrs. Gremillion stayed in a hotel in Florida for a few days trying to rejoin her husband. Mr. Gremillion made it clear that he did not wish to continue living with Sharon and told her to go back to Louisiana. He gave her approximately $86 cash, a credit card with a $300 limit and sent her back to Louisiana to live with her brother and father while he remained in Florida with Leslie.
Mrs. Gremillion ended up in Farmerville, Louisiana, in Union Parish, with her brother and father. On December 13, 2001, approximately one month after moving to Union Parish, she filed a petition for divorce pursuant to Civil Code article 102 in Union Parish. Mr. Gremillion filed for divorce under Article 103 also in Union Parish on May 9, 2002. Subsequently the two cases were consolidated for trial.
The trial began on July 18, 2003. Apparently the ordeal was too much for Mrs. *266 Gremillion. Her speech became slurred and she apparently lapsed into semi-consciousness. She had to be taken from the courtroom by ambulance personnel. The trial was adjourned until December 19, 2003 and completed on that day. The parties submitted briefs and stipulations. The court issued a ruling with oral reasons for judgment on April 4, 2004.
Although Mr. Gremillion was cast in judgment to pay $1750 per month in temporary spousal support and $1400 in permanent spousal support, he did not pay either the interim support arrearage or the current monthly spousal support. A motion for contempt was filed on June 4, 2004. A hearing was held in September and judgment was rendered on October 6, 2004. The court held Mr. Gremillion in contempt of court for willfully violating the court's judgment and sentenced him to serve 60 days in jail in the Union Parish jail. The judge said Mr. Gremillion could purge himself of the contempt by making all future monthly support payments plus $800 per month for the following arrearage. It found that he owed $14,700 in temporary support plus legal interest from the date each payment was due and $25,100 in permanent support arrearage plus legal interest from the date each payment was due, and $1000 in attorney fees.
Mr. Gremillion filed the instant appeal regarding the original judgment, raising five assignments of error:
(1) The trial court erred in denying the exception to venue;
(2) The trial court abused its discretion in awarding $1750 per month interim support.
(3) The trial court was clearly wrong in finding that Mrs. Gremillion was without fault.
(4) The trial court abused its discretion in awarding $1400 permanent spousal support because it exceeds one-third of Mrs. Gremillion's income.
(5) The trial court abused its discretion in awarding $1400 permanent spousal support because it failed to adjust for non-allowable items, excessive and inappropriate expenses.

Discussion

Assignment of Error No. 1
By his first assignment of error, Mr. Gremillion contends that the trial court was manifestly erroneous in denying his exception of improper venue. He contends that Mrs. Gremillion filed the divorce petition in Union Parish only five weeks after moving to that parish to live with her father in Union Parish, but that she actually intends to make Rapides Parish, the location of the family home and the former matrimonial domicile, her permanent residence.
Venue means the parish where an action or proceeding may properly be brought and tried under the rules regulating the subject. La. C.C.P. art. 41. The general rules of venue are enunciated in La. C.C.P. art. 42, which are subject to the exceptions provided in La. C.C.P. arts. 71 through 86 and as otherwise provided by law. La. C.C.P. art. 43. The Louisiana Code of Civil Procedure specially provides the proper venue for divorce actions in Article 3941, requiring that an action for divorce "shall be brought in a parish where either party is domiciled, or in the parish of the last matrimonial domicile." La. C.C.P. art. 3941(A). The venue of a divorce action is jurisdictional and cannot be waived. La. C.C.P. art. 3941(B); Lacroix v. Lacroix, 32,293 (La.App. 2 Cir. 9/22/99), 742 So.2d 1036, writ denied 99-3036 (La.12/17/99), 752 So.2d 167; Wallace v. Wallace, 25,366 (La.App. 2 Cir.1/19/94), 631 So.2d 40, writ denied 94-0627 (La.5/13/94), 637 So.2d 1066. A divorce judgment rendered in a *267 court of improper venue is an absolute nullity. La. C.C.P. art. 3941(B).
The domicile of a citizen is the parish of his principal establishment or habitual residence. La. C.C. art. 38. The party seeking to show his domicile has changed must overcome the legal presumption that it has not been changed by positive and satisfactory proof of the establishment of a new domicile as a matter of fact with the intention of remaining and abandoning the former domicile. La. C.C. art. 41; Lacroix, supra; In re Adoption of Rials, 220 La. 484, 56 So.2d 844 (1951). The intention of making the new residence one's principal establishment is proved by either express declaration of an intent to change before the recorder of the parishes or by proof showing a change in circumstances. La. C.C. arts. 42, 43. The determination of Mrs. Gremillion's intent is a question of fact; the district court's findings of fact are not disturbed on appeal unless they are clearly wrong or manifestly erroneous. Stobart v. State, Through Department of Transportation & Development, 617 So.2d 880 (La.1993); Rosell v. ESCO, 549 So.2d 840 (La.1989). Reversal is warranted only if the appellate court finds that a reasonable factual basis for the district court's finding does not exist in the record, and that the finding is clearly wrong on the record. Mart v. Hill, 505 So.2d 1120 (La.1987). The great discretion accorded the trial court is grounded in the court's superior capacity to assess the credibility of the witnesses, because only the trier of fact can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener's understanding and belief in what is said. Rosell v. ESCO, supra; Perow v. Lenzly, 30,833 (La.App. 2 Cir.8/19/98), 716 So.2d 519.
Louisiana Civil Code article 38 defines a person's domicile as the parish "wherein he has his principal establishment" or "that in which he makes his habitual residence." Article 41 states that a change of domicile is produced by "the act of residing in another parish combined with the intention of making one's principal establishment there." Article 42 provides a method whereby a person may prove the intent to change his domicile by signing an express written declaration to that effect and recording same in the parishes from which and to which he intends to move. In the absence of a declaration, the proof of this intent depends on the circumstances. La. C.C. art. 43.
In this instance, the trial court made several findings of fact to support its ruling that on December 13, 2001, the date of the petition, Union Parish was the domicile of Mrs. Gremillion. These findings were: (1) that she had been living in Union Parish for one month prior to filing the petition; (2) that she had opened a bank account in Union Parish; (3) that she attempted to register to vote in Union Parish; (4) that she obtained a Louisiana driver's license showing her address in Farmerville, Union Parish; (5) that her testimony that she intended to live in Union Parish indefinitely was not contradicted by either herself or her husband; (6) and (7) that to live in Union Parish with her father was her only option because of her financial status and she in fact has resided nowhere else.
Mr. Gremillion contends that at the time she filed her petition, she did not intend to make Union Parish her domicile. When Mrs. Gremillion requested a restraining order prohibiting Mr. Gremillion from alienating the contents of the former matrimonial domicile in Pineville in Rapides Parish on December 12, 2001, she requested that the court give her exclusive use of the former matrimonial domicile in Pineville in Rapides Parish. This incidental matter was set to be heard by rule on *268 February 19, 2002. Mrs. Gremillion was ambivalent, however, in her testimony at the hearing responding to questions regarding her intentions to move to the home.
We conclude that the actions of Mrs. Gremillion and her unique circumstances indicate that she had no option but to make Union Parish her domicile. The trial judge's conclusion that Mrs. Gremillion had established her domicile in Union Parish on December 13, 2001 is a factual finding subject to the manifest error standard of appellate review. Lacroix, supra. After reviewing the record, we find no manifest error in the trial judge's conclusion.

Assignment of Error No. 2
By his second assignment of error, Mr. Gremillion contends that the trial court abused its discretion by awarding $1750 per month interim spousal support, contending that this amount is factually and legally insupportable. He contends that his average yearly income for the years 2000, 2001, and 2002 comes to $44,772 per year, and the amount awarded would constitute 55% of his net pay. He further argues that Mrs. Gremillion's 2002 Affidavit of Income and Expense is highly inflated.
Upon motion of a party or when a demand for final spousal support is pending, the court may award a party interim spousal support allowance based on the needs of that party, the ability of the other party to pay, and the standard of living of the parties during the marriage, which award of interim spousal support allowance shall terminate upon the rendition of a judgment awarding or denying final spousal support or one hundred eighty days from the rendition of judgment of divorce, whichever occurs first. La. C.C. art. 113. The purpose of interim spousal support is to maintain the status quo without unnecessary economic dislocation until a final determination of support can be made and until a period of time of adjustment elapses that does not exceed, as a general rule, 180 days after the judgment of divorce. Defatta v. Defatta, 32,636, 32,637 (La.App. 2 Cir.2/1/00), 750 So.2d 503; Reeves v. Reeves, 36,259 (La.App. 2 Cir.7/24/02), 823 So.2d 1023. Under Article 113, a trial court may award an interim support allowance based on the needs of the party claiming it and the other party's ability to pay, considered in light of the standard of living enjoyed by the parties during marriage. Roan v. Roan, 38,383 (La.App. 2 Cir. 4/14/04), 870 So.2d 626. The trial court is afforded much discretion in determining an award of interim spousal support and that award will not be disturbed absent a clear abuse of discretion. Id.
Dr. O.S. Carter, a psychiatrist, treated Mrs. Gremillion for several months prior to the trial. He testified by deposition that due to her physical disabilities and her mental state, she could not work or support herself at any time after the couple separated. She draws $856 per month in social security for her disability. The court noted that Mr. Gremillion, who left his $3400 per month job to work as a traveling MRI technician, earns approximately $35 per hour for a 40 hour week when he is working, exclusive of overtime pay at 1½ times his regular pay rate. Additionally, he receives a per diem payment of $30 and is furnished with a free rental car and housing expenses, which include the cost of a hotel or rent house plus utilities. Mr. Gremillion testified, noted the court, that he earns $6000 per month when he works plus the car and housing as described above. He works about nine months per year. He earned $55,000 in 2002 not including the free car and housing. He also inherited some timber land *269 from which he received $9000 three years ago, but he has not received any income in the 18 months prior to the hearing. The couple owns a family home in Pineville, Louisiana which is rented for $650 per month; however, the rental income pays the note and upkeep of the house.
We find no abuse of discretion in the trial court's determination of the amount of interim spousal support obligation. Notwithstanding Mr. Gremillion's argument regarding his reported income for the two years prior to 2002, we observe that his earning potential is at least $55,000 per year when he only works nine months of the year. Additionally, he receives a considerable benefit during those nine months in per diem pay, free housing and the use of an automobile. This record supports the trial court's findings, as required by La. C.C. art. 113, that Mrs. Gremillion demonstrated her need for interim spousal support of $1750 per month and that Mr. Gremillion has the ability to meet that need. The trial court is vested with much discretion in determining an award of interim spousal support. Such a determination will not be disturbed absent a clear abuse of discretion. Thomey v. Thomey, 33,000 (La.App. 2 Cir.4/7/00), 756 So.2d 698; McDermott v. McDermott, 32,014 (La.App. 2 Cir.6/16/99), 741 So.2d 186.

Assignment of Error No. 3
By his third assignment of error, Mr. Gremillion contends that the trial court was clearly wrong regarding its findings of fact on the issue of fault. The court determined that the key period that resulted in the dissolution of the marriage occurred between August 2001, when Sharon was released from the hospital following brain surgery and November 6, 2001, when her daughter put her out of the house. The court conceded that Mrs. Gremillion may have been irritable and emotional after returning from the hospital. However, it found that this was not enough to attribute fault to her. By contrast, the court found that Mr. Gremillion's treatment of Mrs. Gremillion amounted to mental cruelty and constructive abandonment.
Mr. Gremillion contends that Mrs. Gremillion did not carry her burden of proving she was without fault. He argues that the testimony of her doctor and their mutual friend, Richard Odell, shows that she was not without fault. These two gentlemen testified as to Mrs. Gremillion's emotional outbursts and irritability after the surgery.
Fault is a threshold issue in a claim for spousal support. In a proceeding for divorce or thereafter, the court may award interim periodic support to a party or may award final periodic support to a party free from fault prior to the filing of a proceeding to terminate the marriage, based on the needs of that party and the ability of the other party to pay. La.C.C. art. 111. The burden of proof is upon the claimant. Roan, supra; Lyons v. Lyons, 33,237 (La.App. 2 Cir. 10/10/00), 768 So.2d 853, writ denied, XXXX-XXXX (La.1/5/01), 778 So.2d 1142.
Revision Comment İ of 1997 to La. C.C. art. 111 notes that fault continues to mean misconduct that rises to the level of one of the previously existing fault grounds for legal separation or divorce. Roan, supra. Jones v. Jones, 35,502 (La. App. 2 Cir. 12/5/01), 804 So.2d 161; Allen v. Allen, 94-1090 (La.12/12/94), 648 So.2d 359. Fault that precludes an award of spousal support must have occurred prior to the filing of the action for divorce, in this case, December 13, 2001. Legal fault may include, among other actions, habitual intemperance or excesses, cruel treatment or outrages, and abandonment. Mayes v. *270 Mayes, 98-2228 (La.App. 1 Cir. 11/5/99), 743 So.2d 1257, 1259. A spouse who petitions for permanent support need not be totally blameless in the marital discord. Only misconduct of a serious nature, providing an independent contributory or proximate cause of the breakup, equates to legal fault. Lyons, supra.
The trial court has vast discretion in matters regarding determination of fault for purposes of precluding final periodic support. The trial judge's finding of fact on the issue of fault will not be disturbed unless manifestly erroneous. Lyons, supra. Even though an appellate court may feel its own evaluations are more reasonable than the factfinder's, reasonable evaluations of credibility should not be disturbed where conflict exists in testimony. Carr v. Carr, 33-167 (La.App. 2 Cir.4/5/00), 756 So.2d 639.
We have reviewed the testimony by depositions of both Dr. Carter and Mr. Odell. Their testimonies bear out that Mrs. Gremillion was in a highly emotional state following her surgery and at times she was argumentative and irritable, especially with Leslie. However, as Dr. Carter noted, Mrs. Gremillion suffered from a history of bipolar disorder and depression. Her symptoms were exacerbated by the brain surgery to remove a subdural hematoma. Mr. Odell only met Sharon and Noel Gremillion for the first time after Mrs. Gremillion's surgery in Florida. He stated in his lay opinion that she was suffering from low self-esteem and was sometimes argumentative with Noel and Leslie. He said there was tension in the house between Leslie and Mrs. Gremillion about "things that was going on." He was present on the day the argument broke out between Leslie and her mother. He also believed that Mrs. Gremillion's illnesses led to her symptoms, including irritability. Odell also testified that on the day Leslie told Mrs. Gremillion to leave, Mr. Gremillion decided not to go with his wife; rather, he chose to send his wife alone to a motel and later back to Louisiana while he remained in Florida. It was thus, Mr. Gremillion's decision to abandon his wife.
Although Mrs. Gremillion's illness was responsible for her irritability and led to Mr. Gremillion's decision to send his wife away, to place legal blame or fault on Mrs. Gremillion, which in fact is a legal judgment of moral responsibility for ending the marriage, would be inappropriate. Indeed it is questionable whether an individual suffering from mental illness can be blameworthy or at "fault" for the dissolution of a marriage where it is the symptomatic behavior of the mental disease that caused the dissolution. In this instance, simply because Mr. Gremillion no longer wanted to endure some of the unpleasant symptoms of Mrs. Gremillion's physical and mental illnesses, those symptoms cannot equate to "fault" on her part in this instance. This would be tantamount to placing moral blame on an insane individual for acts attributable to his insanity and over which he had no control.
For these reasons, we conclude that the trial court did not err in its finding that Mrs. Gremillion was not at fault.

Assignments of Error Nos. 4 and 5.
By his fourth and fifth assignments of error, Mr. Gremillion contends the trial court abused its discretion in awarding Mrs. Gremillion $1400 per month permanent spousal support because the amount allegedly exceeds 1/3 of the appellant's net income in violation of La. C.C. art. 112(B) and because the court failed to make adjustments for non-allowable expenses. The $1400 per month award would require that Mr. Gremillion have a net income of $4200 per month or $50,400 per year. Mr. Gremillion has never *271 earned more than the $55,011 he earned in 2002.
Once freedom from fault is established, the basic tests for the amount of spousal support are the needs of that spouse and the ability of the other spouse to pay. La. C.C. arts. 111, 112; Roan, supra; Carr, supra. The award for final periodic spousal support is governed by La. C.C. art. 112, which requires the court to consider all relevant factors. The nine specific factors listed in C.C. art. 112 are not exclusive.[1] Article 112 also limits the amount to not exceed one-third of the obligor's net income. The trial court is vested with great discretion in making post-divorce alimony determinations, and its judgment will not be disturbed absent a manifest abuse of discretion. Roan, supra.
The earning capacities of the parties, their age, and the duration of the marriage are relevant factors listed in La. C.C. art. 112. The relative financial positions of the parties and the standard of living during the marriage are not listed in C.C. art. 112 but can be relevant factors. As stated above, all relevant factors are to be considered and the court is not limited to those specifically listed in the code article. Knowles v. Knowles, 02-331 (La.App. 3 Cir. 10/2/02), 827 So.2d 642. The trial court is vested with much discretion in determining awards of spousal support. Such determinations will not be disturbed absent a clear abuse of discretion. McDermott v. McDermott, 32,014 (La.App. 2 Cir. 6/16/99), 741 So.2d 186; Broussard v. Broussard, 532 So.2d 281 (La.App. 3 Cir.1988).
In addition to the salary Mr. Gremillion receives for working nine months per year, he also receives $30 per diem pay, free housing and utilities, an automobile and health insurance. Although it did not specify an exact net income amount for these payments, it is clear from its reasons for judgment that the trial court took these employment benefits into consideration. Our review of the record shows that according to his 2002 income tax return, Mr. Gremillion's adjusted gross income was $53,172 with a tax liability of $10,901. This leaves a net income of $42,270 or $3522 per month. The support award of $1400 per month requires Mr. Gremillion's net income to be $4200 per month, which is $678 per month more than Mr. Gremillion's average monthly net income in 2002. However, the tax return does not reflect the added compensation Mr. Gremillion receives for living expenses which are covered by his employer, including the per diem pay, the free housing and automobile. We know the trial court considered these benefits, and therefore, we conclude that the trial court reasonably must have calculated that the net value of the free housing and automobile benefits exceeded the $678 dollar difference between Mr. Gremillion's net average monthly *272 income and the $4200 net monthly income needed to meet the requirement of La. C.C. art. 112(B).
We also reject Mr. Gremillion's argument that the trial court abused its discretion in the award based upon some non-allowable expenses listed by Mrs. Gremillion. The gist of Mr. Gremillion's argument is that the award exceeds what Mrs. Gremillion needs for the basic necessities of life, such as food, clothing and shelter and should not include such luxury items such as newspapers, gifts, recreation, dental and drug expenses and so on. He contends also that many of the expenses are not factually supported by the record.
The trial court stated in its reasons that it reviewed the income statements and affidavits of the parties. However, it did not specify what expenses it allowed for in its judgment. The court also noted Mrs. Gremillion is totally disabled and unable to work in any occupation. She receives $856 per month in social security benefits. She has considerable medical and drug expenses amounting to nearly $500 per month. Based on this record, we conclude that the trial court did not abuse its discretion in awarding Mrs. Gremillion $1400 per month permanent spousal support.

Conclusion
For the reasons stated above, the judgment of the trial court is affirmed. Costs of this appeal are assessed against the appellant.
AFFIRMED.
NOTES
[1] Louisiana Civil Code Article 112 reads:

A. The court must consider all relevant factors in determining the entitlement, amount, and duration of final support. Those factors may include:
(1) The needs of the parties.
(2) The income and means of the parties, including the liquidity of such means.
(3) The financial obligations of the parties.
(4) The earning capacity of the parties.
(5) The effect of custody of children upon a party's earning capacity.
(6) The time necessary for the claimant to acquire appropriate education, training, or employment.
(7) The health and age of the parties.
(8) The duration of the marriage.
(9) The tax consequences to either or both parties.
B. The sum awarded under this Article shall not exceed one-third of the obligor's net income.