976 So.2d 727 (2007)
Karen K. GILLEY
v.
John H. GILLEY, Jr.
No. 07-CA-568.
Court of Appeal of Louisiana, Fifth Circuit.
December 11, 2007.
Roland A. Ditta, Attorney at Law, Gretna, LA, for Plaintiff/Appellant.
Robert C. Lowe, Jeffrey M. Hoffman, Lowe, Stein, Hoffman, Allweiss & Hauver, New Orleans, LA, for Defendant/Appellee.
Panel composed of Judges THOMAS F. DALEY, CLARENCE E. McMANUS, and FREDERICKA HOMBERG WICKER.
*728 CLARENCE E. McMANUS, Judge.
This appeal arises out of a divorce proceeding. Plaintiff, Karen Gilley, filed a petition for divorce, on April 15, 2005. On June 17, 2006 she was granted interim spousal support. The parties were divorced by judgment rendered on February 16, 2006.
On August 14, 2006, Mrs. Gilley filed a Rule to Extend Interim Spousal Support, or in the alternative, Final Periodic Support.[1] In his Pre-Trial Memorandum, Mr. Gilley alleged that Mrs. Gilley was not free from fault in the breakup of the marriage, and that she had "over a lengthy period of time during the marriage of the parties, exhibited cruel intentional behavior, habitual intemperance, continuously accusing [him] of adultery, refusing to have sex, and any other facts to be proven at trial all of which rendered living together insupportable." On November 13, 2006, the trial court rendered judgment denying Mrs. Gilley final periodic support. Mrs. Gilley now appeals the decision of the trial court.
LSA-C.C. art. 111 allows the court to award final periodic support to a party free from fault in the dissolution of the marriage, based on the needs of the party and the ability of the other party to pay. The burden is on the claimant spouse to "affirmatively prove" freedom from fault. Wolff v. Wolff, 07-332 (La. App. 3 Cir. 10/3/07), 966 So.2d 1202, 1205.
We have defined "fault" sufficient to bar final periodic support as follows:
In Simon v. Simon, 96-876 (La.App. 5 Cir. 5/14/97), 696 So.2d 68, this Court found that "legal fault", which will preclude support, consists of serious misconduct, which is a cause of the marriage's dissolution. This Court further found that all spouses have faults, and spouses seeking support need not be perfect to be free from legal fault. Petty quarrels between husband and wife do not rise to the level of "legal fault" but, rather, to be legally at fault, spouse must be guilty of cruel treatment or excessiveness which compel separation because marriage is insupportable. "Fault" which will preclude support contemplates conduct or substantial acts of commission or omission by spouse violative of his or her marital duties or responsibilities.
Evans v. Evans, 04-215 (La.App. 5 Cir. 7/27/04), 880 So.2d 87, 89, writ denied 04-2191 (La.11/19/04), 888 So.2d 200; Desai v. Desai, 01-1325 (La.App. 5 Cir. 4/10/02), 817 So.2d 230, 231. To prove cruel treatment a party needs to show a continued pattern of mental harassment, nagging, and griping by one spouse directed at the other so as to make the marriage insupportable as mere bickering and fussing do not constitute cruel treatment for purposes of denying alimony. Walker v. Walker, 41,573 (La.App. 2 Cir. 11/1/06), 942 So.2d 605, 608.
The trial court is vested with vast discretion in determination of fault for the purposes of determining final support because this issue turns largely on evaluations of witness credibility, and its finding of fault will not be disturbed in the absence of manifest error. Moore v. Moore, 03-1217 (La.App. 5 Cir. 1/27/04), 866 So.2d 910, 914; Jones v. Jones, 35,502 (La.App. 2 Cir. 12/5/01), 804 So.2d 161, 164. Even though an appellate court may feel its own evaluations are more reasonable than the factfinder's, reasonable evaluations of credibility should not be disturbed where conflict exists in testimony. Jones v. Jones, supra, at page 164.
*729 At trial, it was established that Mr. Gilley had a camp in Venice, where he spent considerable time. He further testified that he was an avid hunter and fisherman, and that Mrs. Gilley knew this before she married him. Mr. Gilley stated that he wanted Mrs. Gilley to go to the camp with him, and that she had an open invitation to go, if that were needed. Mrs. Gilley and her sister testified that Mrs. Gilley stopped going to the camp because Mr. Gilley did not want her there.
To meet her burden of proof, Mrs. Gilley presented the testimony of her sister and herself. She testified that she filed for divorce when she discovered Mr. Gilley was having an affair. She denied the allegations of cruel behavior and intemperance, and stated that she did not continuously accuse him of adultery. She stated that she did not deny sex and that she asked to go to the camp with him, but he always had an excuse to leave her behind. She further stated that she "gave up the happiness of me having him home with me" and that she acted basically as a single parent so he could go to the camp and do the things he loved. He gave her remodeling projects to coordinate, and he always was satisfied with the results.
Ms. Gilley's sister, Dawnell McClendon, testified that Ms. Gilley waited on Mr. Gilley "hand and foot." He created remodeling and other projects in the house that she would handle so he could go to the camp. Ms. McClendon never saw her sister habitually drink, and she further testified that Mr. Gilley told her that Mrs. Gilley never refused sex.
Mr. Gilley presented his testimony, as well as the testimony of his mother, his alleged paramour, and two friends. Mr. Gilley testified that during the course of the marriage, Mrs. Gilley would accuse him of having affairs with different women. She would check up on him by showing up where he was and asking questions, sometimes humiliating him. She would question his friends, call him countless times while he was at work and at the camp, and that this behavior deteriorated to where it became a daily behavior. Gilley testified to several specific instances, as did his friends, John Jorgensen and Edward Hayes. Gilley stated that Mrs. Gilley did not drink every day, but when she did drink she would drink to excess and she would become mean and pick fights. He further stated that in recent years, she had locked him out of the marital bedroom, and that she would go play bingo and go to the casinos, returning home late at night. He admitted to doing drugs with her, and said that he stopped using the drugs at home when their child became old enough to realize. He stated they stopped living together when she asked him to leave. Finally he testified that he asked her not to file for the divorce because at that time he still wanted to try to work things out.
Ms. Brown, the alleged paramour, testified that she met Mr. Gilley when she went with her friend Mary, who had been hired to clean his camp. She had never been to the camp without Mary. She denied having an affair with Mr. Gilley.
In its judgment the court said
After pleadings, evidence, and argument of counsel, the court finds that both parties committed numerous and consistent acts which constituted cruel treatment and behavior, defamatory acts, and habitual intemperance, which constitute fault of such a nature and extent to render their marriage and living together insupportable. Although perhaps, not equal, the fault of each of them was sufficiently serious to constitute a proximate cause of the breakup of the marriage.
*730 The court also stated in its judgment that it did not find that adultery was proven on the part of either spouse.
Thus it appears that the trial court found more credible the testimony of Mr. Gilley and his witnesses. In our review, we cannot say that the trial court abused its vast discretion or committed manifest error in its finding that Mrs. Gilley was not free from fault in the break up of the marriage. Accordingly, we find that the trial court did not err in denying Mrs. Gilley's claim for permanent periodic support.
For the above discussed reasons, the judgment of the trial court is affirmed. All costs are assessed against appellant.
AFFIRMED.
NOTES
[1] On November 6, 2006 her rule for extension of interim spousal support was denied.