PATRICIA RIVET MURRAY, Judge.
 

 |, This is a post-divorce matter. Carol Schmitt, the plaintiff, seeks review of the trial court’s judgment finding that she was not free from fault in the dissolution of the marriage to Alton Schmitt, and thus precluded from receiving a final periodic spousal support award. The trial court’s finding of fault was a factual finding based on its resolution of the parties’ conflicting testimony. Because the trial court’s factual finding was not manifestly erroneous, we affirm.
 

 FACTUAL AND PROCEDURAL BACKGROUND
 

 On June 18, 1993, the parties were married, having dated for nine years. On June 1, 1993, shortly before getting married, at Mr. Schmitt’s request, the parties entered into a separation of property agreement (a marriage contract). Both parties had been married before and both had children from their prior marriages. No children were born of this marriage.
 

 On November 2, 2007, after fourteen years of marriage, Mrs. Schmitt filed a petition for divorce under La. C.C. art. 102, which provides for a divorce based on living apart 180 days or more. In her petition, she sought interim and final periodic | gspousal support under La. C.C. arts. Ill, 112, and 113. On April 8, 2008, the trial court awarded Mrs. Schmitt interim spousal support of $2,027 per month retroactive to the date of judicial demand, November 2, 2007. On June 2, 2008, Mr. Schmitt filed a rule for divorce under La. C.C. art. 102. On July 15, 2008, the trial court granted the divorce.
 

 On October 21, 2008, a hearing was held on the issue of whether Mrs. Schmitt was free from fault in the break-up of the marriage for purposes of permanent spousal support. At the hearing, the sole witnesses were Mr. and Mrs. Schmitt. The parties introduced a copy of the marriage contract and two letters Mr. Schmitt wrote to Mrs. Schmitt in July 2007. The trial court took the matter under advisement. On December 12, 2008, the trial court rendered judgment finding Mrs. Schmitt was not free from fault and thus denying her request for final periodic support.
 
 [1]
 
 This appeal followed.
 

 DISCUSSION
 

 The sole issue on appeal is whether the trial court erred in denying Mrs. Schmitt’s request for final periodic support. Final periodic support is provided for in La. C.C. arts. 111 and 112. Article 111 provides that “[i]in a proceeding for divorce or thereafter, the court may award ... final periodic support to a party who is in need of support and who is free from fault prior to the filing of a proceeding to terminate the marriage in accordance with the following Articles.” Article 112(A) provides that “[w]hen a spouse has not been at fault and is in need of support, based on the needs of that party and the ability of the other party to pay, that
 
 *540
 
 spouse may be awarded final periodic support.”
 

 Under C.C. art. 112, the claimant spouse seeking final periodic support must be without fault.
 
 Currier v. Currier,
 
 599 So.2d 456 (La.App. 2d Cir.1992). Freedom from, fault is thus a prerequisite to a former spouse’s claim for final periodic spousal support. The claimant spouse has the burden to “affirmatively prove” his or her freedom from fault.
 
 Wolff v. Wolff,
 
 07-0332, p. 4 (La.App. 3 Cir. 10/3/07), 966 So.2d 1202, 1205.
 

 Although the code articles do not define fault, the comments to Article 111 indicate that “[fjault continues to mean misconduct that rises to the level of one of the previously existing fault grounds for legal separation or divorce.” La. C.C. art. 111, 1997 Revision Comment (c)(citing
 
 Allen v. Allen,
 
 94-1090 (La.12/12/94), 648 So.2d 359). Fault thus includes habitual intemperance or excesses, cruel treatment or outrages, and abandonment.
 
 Walker v. Walker,
 
 41,573, pp. 2-3 (La.App. 2 Cir. 11/1/06), 942 So.2d 605, 608. A spouse who petitions for final periodic support need not be totally blameless in the marital discord. Only misconduct of a serious nature, providing an independent contributory or proximate cause of the breakup, equates to legal fault.
 
 Gremillion v. Gremillion,
 
 39,588, p. 11 (La.App. 2 Cir. 4/6/05), 900 So.2d 262, 269-70.
 

 The trial court is vested with vast discretion in the determination of fault because this issue turns largely on evaluations of witness credibility.
 
 Gilley v. Gilley,
 
 07-0568, p. 3 (La.App. 5 Cir. 12/11/07), 976 So.2d 727, 728; Jones
 
 v. Jones,
 
 38,790, p. 12 (La.App. 2 Cir. 06/25/04), 877 So.2d 1061, 1070. A trial court’s factual findings regarding fault in the area of domestic relations are to be given great deference, and findings of fact on the issue of a spouse’s fault for the purposes of determining final periodic support will not be disturbed on appeal unless found to be manifestly erroneous.
 
 Washington v. Washington,
 
 02-2226, p. 16 (La.App. 4 Cir. 4/23/03), 846 So.2d 895, 904.
 

 In this case, Mr. Schmitt contends that Mrs. Schmitt’s fault consisted of abandonment. The essential elements required to establish abandonment are withdrawal from the common dwelling, absence of lawful cause for the withdrawal, and refusal of the spouse who withdrew to return to live with the other.
 
 Chamblee v. Chamblee,
 
 340 So.2d 378 (La.App. 4th Cir.1976). It is undisputed that Mrs. Schmitt withdrew
 
 from
 
 the common dwelling and that she refused, despite Mr. Schmitt’s requests, to return. The only element in dispute is her absence of lawful cause for withdrawing.
 

 Although in determining entitlement to final periodic support the fault of the spouse from whom support is sought generally is not pertinent. However, an exception is recognized when the ground for establishing fault on the part of the claimant spouse is abandonment.
 
 Terry v. Terry,
 
 06-1406, p. 8 (La.App. 3 Cir. 3/28/07), 954 So.2d 790, 796 n. 1 (citing
 
 Gitschlag v. Gitschlag,
 
 593 So.2d 1331, 1335, n. 1 (La.App. 1st Cir.1991)). Cruel treatment by the other spouse may be sufficient to constitute lawful cause to leave. To prove cruel treatment a party | ¡qieeds to show a continued pattern of mental harassment, nagging, and griping by one spouse directed at the other so as to make the marriage insupportable.
 
 Gilley,
 
 07-0568 at p. 2, 976 So.2d at 728;
 
 Brewer v. Brewer,
 
 573 So.2d 467 (La.1991)(noting that for cruel treatment to constitute fault, it must be of a nature which compel a separation because the marriage is insupportable). “When the degree of spousal fussing and bickering ... allows the finding of a pattern of
 
 *541
 
 harassment, unbraiding, nagging and griping, a determination by the trial court of cruel treatment has been found supported by the record.”
 
 Simon v. Simon,
 
 96-876, p. 7 (La.App. 5 Cir. 5/14/97), 696 So.2d 68, 73 (quoting
 
 Guillory v. Guillory,
 
 626 So.2d 826, 831 (La.App. 2d Cir.1993)). However, “[m]ere friction or dissatisfaction in the relationship or incompatibility between the spouses, however intense, is not enough to constitute cruel treatment or lawful cause for abandonment.”
 
 Adkins v. Adkins,
 
 42,076, p. 4 (La.App. 2 Cir. 4/11/07), 954 So.2d 920, 923. Each must be decided on its own facts.
 

 In this case, Mrs. Schmitt contends that Mr. Schmitt’s conduct and treatment far exceeded reasonable bickering between average married couples and rose to the level of cruel treatment. She further contends that a series of incidents can lay the foundation for one spouse leaving the other and that such was the case here. Mr. Schmitt, on the other hand, contends that the parties had the same day to day garden variety problems experienced in all long term marriages and that their mere bickering and fussing was not sufficient to constitute cruel treatment. Although the | (¡trial court did not provide reasons for judgment, it apparently found that Mrs. Schmitt lacked justification to leave.
 

 Mrs. Schmitt acknowledges that her burden of establishing that the trial court was manifestly erroneous in finding her at fault is a difficult one. Nonetheless, she contends that there is no support in the record for the trial court’s finding. Rather, she contends that the testimony of the parties coupled with the two letters Mr. Schmitt wrote to her in July 2007 establish that she was a good wife, why the marriage failed, and her freedom from fault. She contends that Mr. Schmitt’s letters constituted judicial confessions under La. C.C. art. 1853 of his fault that in turn justified her abandoning him.
 

 A similar situation was presented in
 
 Blackman v. Blackman,
 
 253 So.2d 672 (La.App. 2d Cir.1971). In that case, the wife was seeking to establish she had justification for leaving by establishing her husband’s cruelty. To do so, the wife relied, in part, on a letter written by her husband after she left in which he asked for her forgiveness and begged her to return. Affirming the trial court’s decision rejecting the wife’s demands, the court of appeal reasoned that the evidence before the trial court consisted primarily of the conflicting testimony of the parties, which the trial court resolved in the husband’s favor.
 

 In this case, Mr. Schmitt testified that in the two letters he wrote what he thought Mrs. Schmitt wanted to hear; he “was apologizing for being unkind at times and selfish at times just as people are in all marriages.” He thus contends that the nice things that he said about Mrs. Schmitt in the letters do not prove that she |7was justified in leaving. We agree. The letters, although relevant, were not dispositive of the issue of whether Mrs. Schmitt was free from fault. Rather, the letters have to be read in the context in which they were written: a husband begging his wife to return. The evidence before the trial court thus consisted primarily of the parties’ conflicting testimony.
 

 The record reflects that Mr. Schmitt was a pharmacist and made about five times more than she made in her job as a dental hygienist.
 
 [2]
 
 Mr. Schmitt testified that he was overly generous in that he paid almost all of the household expenses,
 
 *542
 
 including electricity, gas, water, phone, car insurance, life insurance, medical insurance, homeowner’s insurance, cars that he bought for Mrs. Schmitt, car repairs, and house repairs.
 
 [3]
 
 He also paid Mrs. Schmitt’s income taxes. Mr. Schmitt acknowledged that he did not pay any of her uncovered medical expenses. Mr. Schmitt also acknowledged that he was not overly generous in terms of taking Mrs. Schmitt out to eat and things of that nature. Although Mrs. Schmitt admitted that he regularly bought her Christmas presents, she testified that she had to beg Mr. Schmitt to buy food for the holidays and that he rarely bought her clothes. She testified that when they came home from their honeymoon he told her he was not going to take her on any more vacations.
 

 At some time before 2003, Mrs. Schmitt left Mr. Schmitt for about three months. Her reason for leaving the first time was because he was becoming a | ¿monster, out of control, locked her out of the bedroom many times, kicked her in bed, called her the worse wife, told her she was a horrible person, and threatened to take her car (which was in his name). Her reason for returning was that he promised that he was going to work on his issues: being respectful to her; and being more generous, kind, and loving, especially patient. According to Mrs. Schmitt, he worked on these things for about two weeks after she returned and then he got worse than ever.
 

 During the period of 2003 to 2005, Mrs. Schmitt had three back surgeries and one neck surgery. Mrs. Schmitt testified that after her surgeries Mr. Schmitt did not help her and that he expected her to do the cooking and cleaning. In his deposition Mr. Schmitt agreed that he did not help his wife after the surgeries, but at trial he disagreed. Mr. Schmitt acknowledged that he flushed Mrs. Schmitt’s prescription pain medication (Percocet) down the toilet. He explained that she promised him that she would not take Percocet because it is highly addictive. She told him that the drug was prescribed to her by mistake. He further explained that he flushed the Percocet down the toilet because he felt it was in her best interest not to take it.
 
 [4]
 

 In response to the trial court’s question of whether she believed she was at fault for the break up of the marriage, Mrs. Schmitt testified “[ajbsolutely not” and that she did everything she could to make the marriage work. Mrs. Schmitt testified that the reason she left in 2007 was because Mr. Schmitt was treating her |3worse, condemning her, being more controlling, and continually screaming. She cited two things that prompted her departure in 2007. First, she stated that when Mr. Schmitt’s stockbroker would come over, she would have to go in the other room because Mr. Schmitt did not want her to know anything about his money. Second, Mr. Schmitt told her not to talk to anybody in his family and that they thought she was weird.
 

 Mr. Schmitt described their marital problems as normal type problems that any couple married for a long time experiences. He testified that their marriage had its ups and downs. He further testified that his wife on occasion was displeasing to him. He noted that she had bizarre behaviors, including leaving the front door unlocked, claiming that an eighteen-wheel
 
 *543
 
 er truck backed up into her on the interstate, and setting a pillow on fire.
 
 [5]
 
 He characterized Mrs. Schmitt as a little absent minded and “[a] lot careless.”
 

 Mrs. Schmitt testified that Mr. Schmitt was jealous of her family and her relationship with them. She testified that Mr. Schmitt is very obsessive compulsive and that he knew she was “scatter-brained” when he married her. She also described herself as clumsy.
 

 The parties agree that Mr. Schmitt never physically abused or harmed Mrs. Schmitt. They also agree that throughout the marriage they continued to sleep | mtogether and to have sex; Mrs. Schmitt never denied Mr. Schmitt sex. Mrs. Schmitt testified that she believed in sexual healing and that she took her marriage vows seriously.
 

 Based on our review of the record, we do not find that Mrs. Schmitt satisfied her burden of establishing her freedom from fault. In light of the conflicting testimony and facts presented at the hearing and considering the vast discretion provided the trial court, we cannot conclude that the trial court’s factual finding of fault on her part was manifestly erroneous.
 

 Mr. Schmitt asserts a claim for frivolous appeal damages. In order to assert such a claim, an appellee must file an answer to the appeal in this court. La. C.C.P. art. 2133. Although Mr. Schmitt filed an answer asserting such a claim, he filed it in the trial court. For this reason, we do not reach this issue.
 

 DECREE
 

 For the foregoing reasons, the judgment of the trial court is affirmed.
 

 AFFIRMED.
 

 [1]
 

 . The trial court did not provide any factual findings or reasons for judgment. Neither party made a request pursuant to La. C.C.P. art. 1917(A) for the court to provide written reasons.
 

 [2]
 

 . Mr. Schmitt retired in March 2007. Mrs. Schmitt stopped working around 2003 due to her back and neck problems.
 

 [3]
 

 . Although the parties had a separation of property agreement, it did not address the sharing of expenses.
 

 [4]
 

 . At trial, she testified that she was taking various prescription medications, including Percocet for pain.
 

 [5]
 

 . Mrs. Schmitt testified that she accidentally set the pillow on fire. She stated that she had a candle burning to get rid of the odor of smoke from her mother’s clothes that she was washing. She explained that Mr. Schmitt had told her not to wash her mother's clothes. However, since her mother was dying, she defied him and was washing the clothes. Since her mother smoked, her clothes smelled of smoke. In order to avoid her husband smelling the smoke from the clothes, she was burning a candle. The pillow that she was relaxing on came into contact with the burning candle and caught on fire.