MAX N. TOBIAS, JR., Judge.
hThe defendant/appellant, Steven Russell Deputy, M.D., appeals from a judgment that settled the remaining issues in this divorce case between Dr. Deputy and his former wife, Susan Marie Gisleson. For the reasons that follow, we affirm the judgment.
Ms. Gisleson and Dr. Deputy met in San Francisco, California while he was in medical school and Ms. Gisleson was an undergraduate. They subsequently married in June 1992 in San Francisco. Before the *1092 marriage, Dr. Deputy had borrowed money (student loans) to attend school. The loans were repaid during the marriage. After he completed his residency, he, his wife, and their infant son moved to New Orleans where they remained married for 19 years.
In 2009, Dr. Deputy was diagnosed with cancer. He was given chemotherapy and underwent a bone marrow transplant in April 2010. When he returned from his treatment in California, Ms. Gisleson told him she wanted to separate. She moved out of the home on 1 July 2010. The parties attended ^counseling for a few months without success. Thereafter, Ms. Gisleson informed Dr. Deputy that she was not returning to the marriage.
After living separate and apart for one year, Ms. Gisleson filed for divorce pursuant to La. C.C. art. 103 and sought permanent spousal support, a division of the community of acquets and gains, and reimbursement for the value of Dr. Deputy’s student loans that were paid off during the marriage.
A trial was held in which both parties testified. In its 7 November 2012 judgment, the trial court: (1) held that the student loan debt incurred by Dr. Deputy before the marriage in the amount of $105,000 and satisfied with $171,000 of community funds was his separate debt; the court awarded Ms. Gisleson reimbursement of $85,500, being one-half of the community funds used to satisfy the debt in full; (2) held that the interest paid on Dr. Deputy’s student loans was not a community obligation and thus no reimbursement was owed to Dr. Deputy from community funds; (3) found that the student loan incurred by Ms. Gisleson during the marriage was a community obligation; (4) found that Ms. Gisleson was entitled to permanent spousal support; and (5) awarded Ms. Gisleson spousal support in the amount of $655 per month for 18 months.
Dr. Deputy appeals the judgment, arguing that the trial court erred in all of its rulings. In addition, he maintains that the trial court erred in excluding a writing that Ms. Gisleson admitted was written by her and upon which she was questioned. The document was proffered by Dr. Deputy. Finally, he contends that the trial Iscourt failed to issue reasons for judgment after a timely written request to do so. We dispose of this last issue first.
La. C.C.P. art.1917 requires the trial court, when requested by a party, to give written findings of fact and reasons for a contested judgment where the judgment may be appealed, provided the request is made not later than ten days after the mailing of the notice of the signing of the judgment. Dr. Deputy timely filed a request for written reasons on 19 November 2012. (The trial court’s duty under Article 1917 is mandatory.) However, it is “well settled” that the proper remedy for the trial court’s failure to comply with an article 1917 request is to apply for supervisory review or move for remand to compel the trial court’s compliance. Hall v. Folger Coffee Co., 03-1734, p. 5 n. 9 (La.4/14/04), 874 So.2d 90, 96 n. 9. No remedy was sought in this case. Therefore, this issue is waived.
Our review of the remainder of this case is governed by the manifest standard/clearly wrong standard of review. Thus we accord appropriate deference to the trial court’s decision.
Dr. Deputy’s first assignment of error is that the trial court erred when it awarded Ms. Gisleson reimbursement of $85,500 for his medical student loans incurred before the marriage and paid by the community. In essence, Dr. Deputy argues that, although the debts were in *1093 curred by him before the marriage, his medical education allowed him and his family a higher standard of living. Both the parties testified that his increased earning power allowed them a comfortable |4life and permitted Ms. Gisleson an opportunity to stay at home with their children and complete her college degree.
La. C.C. art. 2363 states in pertinent part:
A separate obligation of a spouse is one incurred by that spouse prior to the establishment of a community property regime, or one incurred during the existence of a community property regime though not for the common interest of the spouses or for the interest of the other spouse. [Emphasis supplied.]
The statute leaves no room for interpretation. Dr. Deputy admits that his student loans were his separate obligation. Admittedly, his education benefited the marriage but that does not convert the student loans into a community debt. In addition, both parties admit that community funds were used to satisfy the obligation.
In Katner v. Katner, 09-0974, p. 11 (La. App. 4 Cir. 12/23/09), 28 So.3d 566, 574-75, this court was presented with an identical situation:
Mr. Katner made one claim for reimbursement of the community funds in the amount of $14,004 for the payment of the separate debt of Ms. Katner. La. C.C. art. 2364 provides:
If community property has been used to satisfy a separate obligation of a spouse, the other spouse is entitled to reimbursement upon termination of the community property regime for one-half of the amount or value that the property had at the time it was used.
Prior to her marriage, Ms. Katner obligated herself for student loans for her legal education. During the marriage, Mr. Katner clearly testified from financial records and his personal knowledge that community funds were used to repay some of the outstanding principal and interest indebtedness. Ms. Katner agrees that the community paid more than $11,000, but quibbles about the difference. However, she did not offer any | ¡^documentary evidence to contradict Mr. Katner’s offer. Again, the trial court did not commit manifest error in accepting the evidence offered by Mr. Katner and finding that community funds in the amount of $14,004 were used to pay Ms. Katner’s separate obligation. [Footnote omitted.]
We find no reason to deviate from our holding in Katner. Thus, this assignment of error is without merit.
Next, Dr. Deputy asserts that the trial court erred in failing to find that the interest paid on his student loans was a community obligation for which no reimbursement was due. In making this argument, Dr. Deputy cites, inter alia, La. C.C. art. 2339 and Gill v. Gill, 39,406 (La.App. 2 Cir. 3/09/05), 895 So.2d 807.
Article 2339 states in pertinent part:
The natural and civil fruits of the separate property of a spouse, minerals produced from or attributable to a separate asset, and bonuses, delay rentals, royalties, and shut-in payments arising from mineral leases are community property. Nevertheless, a spouse may reserve them as his separate property as provided in this Article.
Dr. Deputy contends that the interest is the cost of the civil fruit that was his increased earning power. While this is an interesting argument, it is unsupported in the law or jurisprudence.
*1094 “Fruits” are defined in La. C.C. art. 551 as “things that are produced by or derived from another thing without diminution of its substance.” Civil fruits “are revenues derived from a thing by operation of law or by reason of a juridical act,.... ” Thus, pursuant to the Civil Code, Dr. Deputy’s increased earning power as the result of his medical education is not a “fruit.”
In Gill, supra, the court stated:
Nevertheless, interest on a separate debt is chargeable to the community where the debt is part of the | fiprice of (or secured by mortgage on) separate property which itself produces revenue. Hurta v. Hurta, 260 So.2d 324 (La.App. 4th Cir.1972). Wages are the premier community asset acquired through the effort, skill or industry of either spouse. Ross v. Ross, 02-2984 (La.10/21/03), 857 So.2d 384, 390[,] quoting K Spaht and W. Hargrave, Matrimonial Regimes, § 3.3 in 16 Louisiana Civil Law Treatise (2d Ed.1997); La. C.C. art. 2338.
A recent ruling applying Article 2364 addressed mortgage payments during the marriage made for separate debt on a spouse’s separate property which neither generated rent nor was used to benefit the community as the family home. Munson v. Munson, 00-348 (La.App. 3d Cir. 10/4/00), 772 So.2d 141, 145-146. The trial court awarded the reimbursement under Article 2364 for one-half of the total mortgage payment, including principal and interest.
Id. at pp. 16-17, 895 So.2d at 817. The cases cited by Dr. Deputy all involve separate immovable property purchased by one spouse before the marriage with community funds used to satisfy the mortgage and interest payments. We find no case that extends this codal article to obligations, such as student loans, borrowed by a spouse before the establishment of the community property regime. We decline to do so. This assignment of error is also without merit.
Dr. Deputy’s third assignment of error is that the trial court erred in finding that the student loan incurred by Ms. Gi-sleson was a community obligation, contending that it was a separate obligation under La. C.C. art. 2363, which states in pertinent part, “a separate obligation of a spouse is one incurred by that spouse ... during the existence of a community property regime, though not for the common interest of the spouses or for the interest of the other spouse.”
In support of this argument, Dr. Deputy points to Ms. Gisleson’s testimony wherein she stated that she completed college in 2009 and that she intended to leave the marital home immediately after she graduated. He contends that the 17student loan was not incurred solely for the benefit of the community and that she left the marriage before any benefit could be felt.
In response, Ms. Gisleson contends that this argument was never raised before the trial court and, thus, is not properly before this court. However, even if not waived, she argues that the loan was incurred just a few years into the marriage when it was contemplated by the parties that Ms. Gi-sleson’s degree would increase her earning capacity.
First, we disagree with Ms. Gisleson, finding that the issue was obviously raised in the court below. In fact, the trial court made a specific finding that the student loan debt was a community obligation; thus, the issue is properly before us.
However, we do agree with Ms. Gisle-son: the student loan is a community obligation. It is undisputed that the loan was *1095 incurred during the marriage.[1] At the time, the parties knew (or should have known) that it was a community debt. It was then anticipated that her degree would benefit the marriage. The fact that Ms. Gisleson left college to care for her husband and children, finally receiving her degree in 2009, does not change the characterization of the debt. In addition, the trial court was in the best position to make this determination and we find no abuse of discretion on its part. This assignment of error is meritless.
Next, Dr. Deputy asserts that the trial court erred in failing to find that Ms. Gisleson abandoned the marriage, thereby precluding an award of permanent spousal support.[2] He points to Ms. Gisleson’s testimony at trial: she admits that 1 sshe left the marital home without legal cause, he asked her to return, and she refused.
Ms. Gisleson testified that she decided to leave the marriage after Dr. Deputy physically abused her following a night of heavy drinking. She stated that she was fearful that such an occurrence would happen again. She also testified to the ongoing physical confrontations between Dr. Deputy and their adult son.
Dr. Deputy responds that she did not leave immediately after the abuse; she did not cite the abuse as a reason for leaving when they attended therapy together; he quit drinking after his cancer diagnosis; and often their son was the aggressor and Dr. Deputy was only defending himself. Ms. Gisleson agrees that she did not leave right away, but instead felt that she had a moral obligation to stay and take care of her husband while he underwent his cancer treatments for approximately 18 months. However, she testified that her fear of future abuse never abated.
The trial court is vested with vast discretion in the determination of fault because the issue turns largely on evaluations of witness credibility. Schmitt v. Schmitt, 09-0415, pp. 3-4 (La.App. 4 Cir. 12/16/09), 28 So.3d 537, 540, (citing Gilley v. Gilley, 07-0568, p. 3 (La.App. 5 Cir. 12/11/07), 976 So.2d 727, 728 and Jones v. Jones, 38,790, p. 12 (La.App. 2 Cir. 06/25/04), 877 So.2d 1061, 1070). A trial court’s factual findings regarding fault in the area of domestic relations are to be given great deference, and findings of fact on the issue of a spouse’s fault for the purposes of determining final periodic support will not be disturbed on appeal unless found to be manifestly erroneous. Washington v. Washington, 02-2226, p. 16 (La.App. 4 Cir. 4/23/03), 846 So.2d 895, 904.
In Schmitt, we stated:
1 ¡Although the code articles do not define fault, the comments to Article 111 indicate that “[f]ault continues to mean misconduct that rises to the level of one of the previously existing fault grounds for legal separation or divorce.” La. C.C. art. Ill, 1997 Revision Comment (c)(citing Allen v. Allen, 94-1090 (La.12/12/94), 648 So.2d 359). Fault thus includes habitual intemperance or excesses, cruel treatment or outrages, and abandonment. Walker v. Walker, 41,573, pp. 2-3 (La.App. 2 Cir. 11/1/06), 942 So.2d 605, 608. A spouse who petitions for final periodic support need not be totally blameless in the marital discord. Only misconduct of a serious na *1096 ture, providing an independent contributory or proximate cause of the breakup, equates to legal fault. Gremillion v. Gremillion, 39,588, p. 11 (La.App. 2 Cir. 4/6/05), 900 So.2d 262, 269-70.
[[Image here]]
Although in determining entitlement to final periodic support the fault of the spouse from whom support is sought generally is not pertinent. However, an exception is recognized when the ground for establishing fault on the part of the claimant spouse is abandonment. Terry v. Terry, 06-1406, p. 8 (La.App. 3 Cir. 3/28/07), 954 So.2d 790, 796 n. 1 (citing Gitschlag v. Gitschlag, 593 So.2d 1331, 1335, n. 1 (La.App. 1st Cir.1991)). Cruel treatment by the other spouse may be sufficient to constitute lawful cause to leave. To prove cruel treatment a party needs to show a continued pattern of mental harassment, nagging, and griping by one spouse directed at the other so as to make the marriage insupportable. Gilley, 07-568 at p. 2, 976 So.2d at 728; Brewer v. Brewer, 573 So.2d 467 (La.1991)(noting that for cruel treatment to constitute fault, it must be of a nature which compel a separation because the marriage is insupportable). “When the degree of spousal fussing and bickering ... allows the finding of a pattern of harassment, unbraiding, nagging and griping, a determination by the trial court of cruel treatment has been found supported by the record.” Simon v. Simon, 96-876, p. 7 (La.App. 5 Cir. 5/14/97), 696 So.2d 68, 73 (quoting Guillory v. Guillory, 626 So.2d 826, 831 (La.App. 2d Cir.1993)). However, “[m]ere friction or dissatisfaction in the relationship or incompatibility between the spouses, however intense, is not enough to constitute cruel treatment or lawful cause for abandonment.” Adkins v. Adkins, 42,076, p. 4 (La.App. 2 Cir. 4/11/07), 954 So.2d 920, 923. Each must be decided on its own facts.
Schmitt, 09-0415 at pp. 3-5, 28 So.3d at 540-541.
| )nHere, Dr. Deputy admitted to striking his wife once while he was drunk, although he downplayed the occurrence during the trial. In any event, Ms. Gisleson testified that she did not feel safe even with the passage of time. The trial court heard the conflicting testimony and came to the conclusion that Ms. Gisleson established legal cause for leaving the marriage and, thus, was not at fault for abandonment. Based on the record before us, we cannot say that the court abused its vast discretion. This assignment of error is without merit.
In his last substantive assignment of error, Dr. Deputy argues that Ms. Gisle-son did not prove that she needed the spousal support awarded by the trial court. To support his argument, Dr. Deputy has poured over his ex-wife’s expenditures item by item. We decline to advise Ms. Gisleson that she is required to shop for groceries at Wal-Mart or Family Dollar, or set a price limit on what she can spend at restaurants. What is of primary importance is that Ms. Gisleson makes approximately $29,820 per year and provided evidence to the trial court that she is short $654.54 per month to meet her needs. We also note that Dr. Deputy is in a position to pay this amount; he makes over $100,000 per year. Despite her initial claim for $654.54 per month for five years, the trial court weighed the evidence and awarded her $655 per month for 18 months, or a total of $11,790. We do not find that the trial court abused its discretion in this matter.
Finally, Dr. Deputy argues that the trial court improperly excluded a letter written by Ms. Gisleson into evidence; the letter was proffered by him into the record *1097 for our review. This letter was written by Ms. Gisleson to Dr. Deputy; the therapist assigned both parties to write a letter to the other. Dr. Deputy contended that the letter was being used for impeachment purposes.
|nThe record reflects that Ms. Gisleson was questioned about the letter, admitted to writing it and answered truthfully regarding its contents, in particular that she did not state in the letter that she was leaving the marital home because of his spousal abuse. The trial court ruled that the letter was cumulative of Ms. Gisleson’s testimony and, therefore, inadmissible. Arguably the letter was a prior inconsistent statement and therefore admissible. See La. C.C. arts. 802 and 808. We find, however, that in this bench trial that the error of exclusion was harmless.
“Initially, we note that a trial judge has vast discretion concerning the admissibility of evidence. The trial judge’s decision to admit or exclude evidence will not be reversed on appeal absent a clear showing that he or she has abused that discretion.” Richardson v. Richardson, 07-0430, p. 9 (La.App. 4 Cir. 12/28/07), 974 So.2d 761, 769 (citing Boykins v. Boykins, 04-0999, p. 4 (La.App. 4 Cir. 4/24/07), 958 So.2d 70, 74; Boutte v. Kelly, 02-2451, p. 10 (La.App. 4 Cir. 9/17/03), 863 So.2d 530, 541.) After examining Ms. Gisleson’s testimony and the letter proffered by Dr. Deputy, we find that any error was harmless. The actual letter adds nothing to these proceedings. This assignment of error is also without merit.
Based on the foregoing, we affirm the judgment of the trial court.
AFFIRMED.

. The record fails to reflect exactly when the loan was originally incurred. Dr. Deputy claims that it was late in the marriage while Ms. Gisleson states that it was about 15 years before the divorce.

. Ms. Gisleson sought five years of support but was awarded support for 18 months.